# Richmond.

ALLEMONG v. GRAY'S ADMINISTRATOR AND OTHERS.

NOVEMBER 14, 1895.

1. CONSTRUCTION OF DEED—*Language Used—Circumstances—Words Taken Against Grantor.*—The effect of language used in a deed is to be gathered from a careful examination of the whole deed, and not merely of disjointed parts, so as to give effect to the whole. The intention of the grantor, as derived from the deed itself, should be sought after, and, if discovered, should be carried into effect, if it can be done consistently with the rules of law. If the words and provisions are doubtful, they are to be taken most strongly against the grantor. If susceptible of different constructions, the circumstances attending the transaction, the situation of the parties, and the state of the thing granted at the time of the grant, should be taken into consideration, for the purpose of ascertaining the probable intent.

2. COVENANTS' OF WARRANTY—*Restrictive Covenant of Title Followed by Other Covenants—Case at Bar.*—The covenant of warranty is generally considered the principal covenant in conveyances, and where this is special, and is followed in the same sentence by other covenants in more general language, the subsequent covenants will be restricted by the special covenant of warranty, unless a different intention is manifest. In the case at bar the subsequent covenants are restricted by the precedent covenant of special warranty. The covenants were that the grantors " will warrant specially the land hereby conveyed ; that they have the right to convey the said land to the said grantees ; that the said grantees shall have quiet possession thereof, free from all encumbrances; that they will execute such further assurances of said land as may be requisite, and that they have done no act to encumber the same."

Argued at Staunton. Decided at Richmond.

Appeal from a decree of the Circuit Court of Rockingham county, pronounced October 29, 1891.

*Reversed.*

This was a suit in chancery instituted in the Circuit Court of Rockingham county, by H. J. Gray and sundry others, suing on behalf of themselves and others, creditors of the estates of Jacob Dundore and John R. Koogler, against the personal representatives of said Dundore and Koogler, John W. F. Allemong, and numerous other persons. The complainants, after setting out in their bill how Dundore and Koogler had obtained a deed purporting to convey to them 53,000 acres of land, known as " Hollingsworth survey," lying partly in the State of Virginia and partly in West Virginia, then set forth in detail the sale and conveyance by Dundore and Koogler of different parts of the tract to various purchasers, and the subsequent sale and conveyances made by these purchasers. The complainants charge that all the lands so conveyed by Dundore and Koogler and their vendees had been legally recovered by Emily Hollingsworth, the rightful owner; and they claimed relief upon the grounds, first, that Dundore and Koogler never had any legal title to said lands, and that they had perpetrated a fraud upon their vendees in conveying to them lands to which they had no title; and, secondly, they claimed relief by reason of the covenants contained in the deeds of conveyance made by Dundore and Koogler and their vendees, and they asked that all the rights and liabilities of the different parties should be settled in that suit.

The appellant was only interested in one part of the said Hollingsworth land, as a vendee of the said Dundore and Koogler, and the claim against him, as set forth in the bill of complaint, is upon the following grounds, as stated in the bill, to-wit: That on the 12th day of May, 1864, the said Jacob Dundore and John R. Koogler conveyed by deed to J. W. F. Allemong and Franklin Mayers a part of the tract of land aforesaid, containing thirteen hundred and eighty acres, for a consideration of $2,500 in hand paid, the said Jacob

Dundore and John R. Koogler covenanting in said deed as follows, to-wit: "that they will warrant specially the land hereby conveyed; that they have the right to convey the said land to the said grantees; that the said grantees shall have quiet possession thereof, free from all encumbrances; that they will execute such further assurances of the said land as may be requisite; and that they have done no act to encumber the same." That on the 16th day of November, 1865, the said J. W. F. Allemong and G. F. Mayers, by their deed of that date, conveyed to the decedent, J. D. Price, and one Philip Phares, the same parcel of land, for the consideration of $600.00, named in said deed, with the same covenants for title as were contained in the deed of Dundore and Koogler. That on the 23d day of January, 1866, the said Joseph D. Price and Philip Phares, by their deed of that date, conveyed to John T. Green and Wm. F. Sadler eight-ninths of the same parcel of land, for the consideration of $1,076.40, and covenanted in this deed as follows, to-wit: "that they will warrant generally, for themselves, their heirs and assigns, the real estate hereby conveyed; that they have the right to convey the same to said grantees; that the said grantees shall have quiet possession thereof, free from all encumbrances; that they will execute such further assurances as may be requisite; and that they have done no act to encumber the same."

The complainants in their bill further charge that Emily Hollingsworth instituted her action of ejectment in the United States Court, and recovered this tract of land, together with the other tract of land embraced in her survey, and sold by Dundore and Koogler, and obtained a judgment for costs, as set forth in the bill.

So far as the appellant is concerned, the case involved only the question of liability under the covenants contained in the deed from J. W. F. Allemong and G. F. Mayers to J. D. Price and Philip Phares of date November 16, 1865, referred

to above; and the one question submitted to the court for decision was simply the effect of the covenants contained in the deed.

The land having been recovered from purchasers of Allemong and Mayers, or their ·alienees, by title paramount, the Circuit Court held that the covenants in the deed subsequent to the covenant of special warranty were not restricted by the covenant of special warranty, and gave a decree in favor of Allemong and Mayers against the personal representatives of Dundore and Koogler for $205.70 and interest, and against them, in favor of several persons claiming under them, for $938.07 and interest. These amounts were ascertained to be the proper amounts with which the parties were chargeable by the commissioner of the Circuit Court to whom the case was referred.

*J. B. Stephenson, George G. Grattan,* and *G. W. Berlin,* for the appellant.

*John E. Roller,* for the appellees.

KEITH, P., delivered the opinion of the court.

The controversy in this case arises upon the construction of the covenant in the deed from Allemong and wife and Gervis F. Mayers to Joseph D. Price and Philip Phares, which covenant is in the following words:

" John W. F. Allemong and wife and Gervis F. Mayers covenant that they will warrant specially the land hereby conveyed ; that they have the right to convey the said land to the said grantees ; that the said grantees shall have quiet possession thereof, free from all encumbrances ; that they shall execute such further assurances of said land as may be requisite, and that they have done no act to encumber the same."

The effect of the language here quoted is to be gathered from a careful examination of the whole deed.  As was said in *Whallon* v. *Kaufman,* 19 John., at page 100, "the cardinal point is, what was the intention of the parties, as derived from the deed itself.  When that is discovered, it ought to be carried into effect, if it can be done consistently with the rules of law.  If the words and provisions are doubtful, they are to be taken most strongly against the grantor.  If they are susceptible of different constructions, the court may take into consideration the circumstances attending the transaction, the situation of the parties, and the state of the thing granted at the time of making the grant, for the purpose of ascertaining the probable intent."

In Sugden on Vendors, page 606, it is said that "where restrictive words are inserted in the first of several covenants, having the same object in view, they will be construed as extending to all the covenants, although they are distinct." To the same effect, see Rawle on Covenants for Title, sec. 288.

In one of the earliest cases on this subject, that of *Broughton* v. *Conway,* reported in 2 Dyer 240*a,* the covenant was, "that the covenantor has done no act to impeach, but that the assignee may quietly enjoy, without let of him or of any other person."  It was held that the words "but that" have relation to the covenant that he "has done no act," and extends it only to acts done by the defendant himself.

In *Browning* v. *Wright,* 2 Bosanquet & Puller 13, which is the leading case of one covenant being restrained by another, A, after granting certain premises in fee to B, and after warranting the same against himself and heirs, covenanted "that, notwithstanding any act done by him to the contrary, he was seised of the premises in fee, and that he had full power to convey the same."  He then covenanted for himself, heirs, &c., that B should quietly enjoy, without interruption from himself, or any other person claiming under

him; and, lastly, that he, his heirs, and all persons claiming under him, should make further assurances. It was held that the intervening general words " full power to convey " were either part of the preceding special covenant, or, if not, that they were qualified by all the other special covenants against the acts of himself and heirs.

Lord Eldon, after stating that the words of the covenant are to be taken most strongly against the covenantor, but that the intention of the parties, as collected from the whole context of the instrument, must prevail, says: " My opinion, upon considering the whole deed, is that the covenant is a special one. What would be the use of any of the other covenants if this were general? It would be of little service to the grantor to insist that the warranty, and the covenant for quiet enjoyment, and further assurances, were specially confined to himself and heirs, if the grantee were at liberty to say I cannot sue on these covenants, but I have a cause of action arising upon a general covenant which supersedes them all. It appears to me, from the words and context of the deed, that, in such a case, we should be driven to say that the grantor intended at the same time to give a limited and unlimited warranty."

The case of *Howell* v. *Richards*, 11 East 633, is sometimes referred to as establishing propositions at variance with the case of *Browning* v. *Wright*. A careful consideration, however, of these two cases will show that no such antagonism exists between them. The courts, guided by the cardinal rule of construction which requires them to seek for the true intent and meaning of the parties in the several instruments under consideration, found in the one case that the covenantor intended that the restrictive words should apply to and control the measure of his liability upon all; and in the other case that the intent of the covenantor was to restrict his responsibility upon one covenant, and to assume a liability

Opinion.

without restriction upon the other.  In *Howell* v. *Richards*, the releasors " covenanted that, for and notwithstanding any act by them, or any or either of them, done to the contrary, they had good title to convey in fee; and that they, or some one of them, for and notwithstanding any such matter or thing aforesaid, had good right and full power to grant, &c.; and, likewise, that the releasee should peaceably and quietly enter, hold, and enjoy the premises granted, without the law-ful let or disturbance of the releasors, or their heirs or assigns, or for or by any other person or persons whatsoever; and that the releasee should be kept harmless and indemnified by the releasors and their heirs against all other titles, charges, &c., save and except the chief rent issuing and payable out of the premises to the lord of the fee."   It was held that the gene-rality of the covenant for quiet enjoyment against the releasors and their heirs, or any other person or persons what-soever, was not restrained by the qualified covenants for good title and the right to convey.   In that case not only do the covenants stand separate and distinct the one from the other, but the covenantor, after covenanting against himself and his heirs, expressly extends the operation of the covenant to any other person or persons whatsoever; and, as though to place his intention beyond all doubt, saves and excepts his liability as to the chief rent issuing and payable out of the premises to the lord of the fee.

The only case in the Virginia Reports to which we have been referred as bearing upon this question is that of *Dickin-son* v. *Hoomes's Adm'r*, 8 Gratt. 353.   The decision there was that the limited covenant did not operate to restrain the subsequent unlimited covenant.   The reasoning of the majority of the court is not given, and therefore the decision sheds very little light upon the subject under investigation.

In *Nind* v. *Marshall*, 5 Eng. Com. Law 95, one of the covenants was against " all persons whatsoever."   Dallas,

Chief Justice, said : " I think ' all persons whatsoever ' must
be construed to mean persons of the description in the other
covenants, that is, persons claiming under the covenantor ; and
that they are in the nature of sweeping and comprehensive
words, introduced to give the largest effect to the special
words."

We do not deem it necessary to refer to other decided
cases.  In the references already given to Sugden and Rawle
will be found a collation and discussion of all the authorities
touching upon this point.  It will be observed that in the
covenant under consideration all the covenants are embraced
in one sentence ; that the name of the covenantors are only
once introduced ; that the parts of the sentence are separated
only by semi-colons ; and that the covenants, save the first
one, are in themselves incomplete unless reference be had to
it, and the word " that," which introduces each of the cove-
nants, necessarily has reference and relation to the first or
principal covenant.

As was said in *Browning* v. *Wright*, if the covenantors,
having given a special covenant of warranty, have in the
next breath bound themselves without limitation, we should
be driven to say that the grantors intended at the same time,
and in the same sentence, to give a limited and an unlimited
warranty.  With us, the covenant of warranty is considered
the principal one in conveyances, and has in practice taken
the place, and almost superseded the use, of all others.  It is
" the sweeping covenant."  See Rawle on Covenants for
Title, section 91.

It would be strange indeed that the grantor should care-
fully guard and limit his liability upon this, the most im-
portant of all his covenants, and leave himself open to an
unlimited liability upon other covenants occurring, not only
in the same clause, but in the same sentence—a sentence
whose several parts are so connected as to lead irresistibly to

the conclusion that they are all to be considered and construed together. We are not unmindful of the rule of construction which requires that language shall be taken most strongly against him who uses it, but it is said, with respect to the subject under investigation, that this rule " is seldom or never applied except where the intention of the covenantor evidently harmonizes with the rule, and its application is therefore useless" (Rawle on Covenants, 5th ed., note to page 484) ; the primary duty being to ascertain the intention of the parties from the language used. The best consideration we have been able to give it, leads us to the conclusion that the intention of the covenantors, in the language used by them, was that the limitation upon the covenant of warranty should be applied so as to restrict the operation of those covenants which succeeded it.

For these reasons we are of opinion that the decree of the Circuit Court should be reversed.

*Reversed.*