## Richmond.

VIRGINIA & TENNESSEE COAL & IRON CO. v. FIELDS & OTHERS.

December 3, 1896.

1. EJECTMENT—*Confession of judgment by one defendant.*—It is not error to permit one of several defendants in ejectment to confess judgment in favor of the plaintiff when not induced to do so by any improper motive, nor by any intent to injure or embarrass his vendee and co-defendant.

2. EJECTMENT—*Record of another suit as evidence—Exhibits—Waiver of objection.*—In an action of ejectment the record of another suit may be introduced for the purpose of using as evidence certain exhibits contained in the record, and for no other purpose, where the exhibits tend to prove title, and are accompanied by proof of possession under claim or color of title. An objection by a defendant to the introduction of a record in evidence is waived by his subsequently introducing the same record.

3. EJECTMENT—*Reservation in deeds.*—A plaintiff in ejectment may introduce in evidence a deed for the purpose of supplying a link in his chain of title by means of the reservation contained in such deed from which a grant to him may be presumed as against the defendant.

4. COMMISSIONER'S DEED—*Direction to execute—Confirmation.*—Where a commissioner of court is directed to sell a tract of land and on compliance with the terms of sale to convey the same to the purchaser, and he makes such sale and conveyance, and reports the same to the court which confirms the right, this is a sufficient confirmation of the deed, though no deed or copy thereof is returned with the report.

5. DEEDS—*Interlineations—Defacement.*—The fact that a deed contains immaterial interlineations is not sufficient to exclude it as evidence in an action of ejectment. In the case at bar, if the supposed defacement of the deed was a defacement at all it was in an immaterial respect, and the deed was properly admitted in evidence.

6. DEEDS—*Quit-claim deed—Prior unrecorded deed.*—The grantee in a quit-claim deed, with covenant of special warranty, which purports to convey "such interest only as they (the grantors) now have, whatever that may be " takes in subordination to a prior unrecorded deed, and such quit-claim deed cannot be introduced in evidence to defeat the title deduced under such prior unrecorded deed.

7. EJECTMENT—*Particulars of defence—Arrest of judgment.*—An objection that the defendant in ejectment was required to state the particulars of his defence cannot be made for the first time after verdict by motion in arrest of judgment. It should have been done by a bill of exceptions, or objection made when the court passed on the motion for the bill of particulars.

Error to a judgment of the Circuit Court of Wise county, rendered September 19, 1894, in an action of ejectment, wherein the defendants in error were the plaintiffs, and the plaintiff in error and others were the defendants.

*Affirmed.*

This is an action of ejectment instituted in the Circuit Court of Wise county by Aaron H. Nash against James Wright. Both the plaintiff and the defendant died pending the action and the suit was properly revived.

Before trial, the plaintiff in error, the Virginia & Tennessee Coal & Iron Company, was, on its petition, admitted a party defendant in the action, and became the principal defendant. On the motion of the plaintiffs said defendant was required to file a statement of the grounds of its defence to the plaintiff's action, which statement is as follows:

"1. That the plaintiff has not now, nor did he have at the time of instituting suit, the legal title to the land in question.

"2. That plaintiff is not now, nor was he at the time of instituting suit, entitled to the possession of the land in question.

"3. That the legal title to the land in question is now, and was at the time of instituting suit, outstanding in the legal representatives of F. P. DeTubeuf, deceased.

"4. That the legal title to the land in question is now, and was at the time of instituting suit, outstanding in the heirs of Dale Carter, deceased.

"5. That the legal title to the land in question was prior to the time of instituting suit, forfeited to the Commonwealth of Virginia.

"6. That the defendants, the heirs of James Wright, have acquired title to the land in question, under and by virtue of the statute of limitations.

"7. That the defendant, the Virginia & Tennessee Coal & Iron Company, was a bona fide purchaser for value, without notice of the above suit."

Several of the defendants disclaimed any interest in the land in controversy, and were permitted to confess judgment in favor of the plaintiffs. The plaintiffs showed a complete paper title to the land in controversy, provided the evidence offered by them to show such title was admissible. The plaintiffs in order to make out their title offered in evidence the record of a suit in the Circuit Court of Russell county, brought in the year 1879, by James Campbell against the unknown heirs of Richard Smith. This record was offered for the purpose of producing several exhibits, which were made a part of the bill in that suit, and for that purpose only. This was objected to by the defendants on two grounds: first, that if the record was offered at all it must be offered for all purposes for which it might be available to either party; and second, because the exhibits were not competent evidence. The exhibits offered tended to prove title in those under whom the plaintiffs claimed, and were admitted in evidence by the trial court. The plaintiffs claimed that the land in controversy was part of a larger tract of 10,000 acres which had formerly belonged to one Richard Smith, and they offered in evidence a deed from Richard Smith to John Water and others, conveying upwards of 340,000 acres; that there was expressly reserved out of that grant a tract of land containing about 50,000 acres situated at or near the junction of Clinch and Guests rivers. The object of this evidence was to supply a missing link in the plaintiff's chain of title by showing a reservation in the deed from Smith to Water, and this reservation being described by natural boundaries, was shown to embrace the lands now claimed by the plaintiffs in this suit. The

plaintiffs did not claim under this deed, but claimed that it showed the amount and location of a reservation which embraced the lands claimed by the plaintiffs, from which fact a jury might presume a grant to those under whom the plaintiffs ·claim. The defendants objected to the introduction of this deed as it was not a link in the chain of title itself, and that no presumption should be made against the defendant who was in possession. The plaintiffs also introduced a deed from John Bickley, com'r, to James Campbell, and a deed from Wm. H. Cook, com'r, to James Campbell. Each of these deeds purported to be made in pursuance of decrees entered in the suits in which the commissioners were appointed, and the chief objection to them was that the deeds were never approved by the court; but it appears from the record that the commissioners were authorized to sell and convey, and that they did so, reported their action to the court, and that the court confirmed the reports of the commissioners, although neither the deeds themselves nor copies thereof were filed with the reports, and consequently the court could not pass upon the terms of the deeds themselves. These objections were overruled by the trial court. The plaintiff also introduced in evidence a deed from James Campbell by Wm. H. Burns, his attorney in fact, to Aaron Nash. The defendants objected to the introduction of this deed "unless the interlineations and defacements of the deed were satisfactorily accounted for, and for other reasons." What the interlineations or defacements were do not appear from the record, but the brief of counsel for the plaintiff in error states that "the description of the land described in the deed is in a wholly different hand-writing, and on different paper, from the rest of the deed, and a portion of the deed upon which this description is written appears to have been pasted on the rest of the instrument. There are also various interlineations through the deed, and the acknowledgment is also interlined and ever so defective. *   *   * The inks used are

different, the handwritings are different, the papers are different—in fact the deed is upon its face a piece of patch-work."

The explanation given in the brief of counsel for the defendant in error is that the courses were written out by the surveyor, and that the agent for the grantor simply wrote the granting and habendum clauses of the deed, and, not wanting to risk making a copy of the courses, securely pasted the first and concluding parts of the deed to the description furnished by the surveyor. The record, however, fails to disclose either the interlineations or the defacements complained of. Other objections were made to testimony offered in the cause, but the rulings of the court thereon sufficiently appear in the opinion.

After the evidence was all in the court, upon the request of the plaintiffs, gave the following instructions against the objections of the defendants:

"No. 1. The court instructs the jury that if you believe from the evidence that Aaron Nash purchased the land in controversy from Wm. Nash, who was then claiming to act as agent for James Campbell, and that he got a contract in writing from Wm. Nash, as agent aforesaid, for said land in the year 1860, and that on or about the year 1863, after he had got the contract from Wm. Nash, he purchased the improvement claim of James Wright, who was at that time living on the land, and that then James Wright moved off of the land and surrendered possession thereof to said Aaron Nash, and that said Nash received a conveyance for the land in evidence before you, known as the Skeen land, and that after he bought this Skeen land, the home lands upon which Aaron Nash lived and the Skeen lands and the lands purchased from Wm. Nash became adjoining and coterminus tracts, and that said Aaron Nash after that time continued to live upon the lands mentioned in the evidence as his home lands and to claim possession of all his coterminus tracts including the lands in controversy, then that, in contemplation

of law, he was in possession of the said land in controversy; and if you further believe from the evidence that whilst the said Aaron Nash was so in possession, James Wright moved upon and took possession of the land in controversy, without title in himself or authority from the true owner, or a bona fide claim of title or right, legal or equitable, to said land, then he was a mere intruder; then Aaron Nash, in his lifetime and the persons now claiming under him had the right to eject the said James Wright, without showing any title to said land; and the defendant could not in such a case defeat plaintiff's action by showing an outstanding title in others. And if you further believe that Aaron Nash is now dead, and that before his death he made and published his last will and testament, by which he devised the lands in controversy to Betty Fields, for life, with *remains* to her children, Wm. A. Fields, Chas. B. Fields and E. K. R. Fields, and that Bettie Fields is now dead, and that she died leaving the said three children mentioned as her heirs at law, and that C. B. Fields has died, leaving his interest in the land by his last will and testament to his father, Wm. Fields, who would be his only heir at law unless the said C. B. Fields had children of his own, then they must find for the plaintiff, unless they believe that the defendant, Va. Tenn. Coal & Iron Co., acquired title thereto under the deed, *the deed* from Given Campbell and others, read in evidence; and if the jury believe from the evidence that the deed made by W. H. Burns, attorney in fact for James Campbell, covers the land in dispute, then the said company acquired no title by reason of said deed from Given Campbell and others.''

"No. 2. The court instructs the jury that if they believe from the evidence that the plaintiffs at the time of the institution of this suit had legal title to the land in controversy, and that the present plaintiffs have deduced legal title thereto from said A. H. Nash, then they should find for the plain-

tiffs, unless the right to recover at the time suit was instituted was barred by the statute of limitations."

"No. 3. And the court further tells the jury that if from all the evidence they believe that the power of attorney to Lott and Higbee, was in fact executed, then they should find that the same was executed, and after a great lapse of time; and the failure, if any, of Richard Smith, or those claiming under him, to assert title, they would have a right to presume the execution of a deed by Smith, if under all other circumstances and evidences and evidence before them, they believe such a presumption a fair and reasonable one."

"No. 4. And as to the alleged heirship of Francis and Alexander DeTubeuf, the recitals that they were the only heirs in the mortgage deeds are proper evidence of such heirship, and if from such recitals and other facts and circumstances of the case they believe them to be such heirs, they should so find."

The defendants then asked the following instructions:

"1. The court tells the jury that if they believe that the land in controversy was settled by James Wright and those under whom he claimed, for thirty years prior to March 7th, 1878, then they may presume that a grant had issued for the land, and that in computing the thirty years the jury need not exclude the period covered by the stay law.

"2. The court tells the jury that the plaintiffs, in order to recover, must show a complete legal title in themselves before the institution of this suit.

"3. The court tells the jury that in computing the length of time during which adverse possession was continued, they should exclude the seven years, eight months and fourteen days from April 17, 1861, to January 1, 1869.

"4. The court tells the jury that one in bona fide possession of land is presumed to have a legal title until the contrary is shown.

"5. The court tells the jury that if the plaintiffs claim by

adverse possession, commencing prior to the year 1861, then such possession must have continued for fifteen years prior to the institution of the suit, and excluding the period from April 17, 1861, to the 1st of January, 1869.

"6. The court tells the jury that the plaintiffs in this case must remove every possibility of title in another or others before they can recover.

"7. The court tells the jury that unless they believe that the plaintiffs and those under whom they claim have been in bona fide possession of the property in support of the title they assert, then the jury should make no presumptions of title in their favor.

"8. The court tells the jury that if they believe that the plaintiff, Aaron H. Nash and those claiming under him, did not have adverse possession of the lands in controversy for fifteen years prior to the commencement of this suit, exclusive of the period from April 17, 1861, to January 1, 1869, under the title bond from Wm. Nash, attorney, dated 1860, then the jury will not consider said title bond further.

"9. The court tells the jury that no writing is necessary to pass the possession of land from one in adverse possession to another who continues the possession.

"10. The court tells the jury that if they believe James Wright used and claimed the land in dispute as real estate, then a writing was necessary before Aaron H. Nash could compel a conveyance of same from Wright under a contract of sale.

"11. The court tells the jury that if Wright agreed to sell his improvement to Aaron H. Nash on certain terms, and Nash failed to comply with the terms, then Wright was not legally bound to complete the contract on his part.

"12. The court tells the jury that if they believe that Wright was living on the land in dispute prior to the date of A. H. Nash's title bond from Wm. Nash, attorney, purporting to be an agent of Campbell's, and was claiming and using

the land as his own to the extent of his boundary, then A. H. Nash was given notice of Wright's claim to the lands and could not hold the lands in dispute adversely to Wright.

"13. The court tells the jury that if no *lis pendens* was filed in this suit, and the Virginia & Tennessee Coal & Iron Company bought coal and mining rights from James Wright after the suit was commenced, then the jury will consider the possession of James Wright as not interrupted by the bringing of the suit as far as the coal purchased by the Virginia & Tennessee Coal & Iron Company is concerned.

"14. The court tells the jury that if they believe from the evidence in this case that the original plaintiff, Aaron H. Nash, has died since the institution of this suit, then they must find for the defendant unless they believe from the evidence adduced before them that said suit has been revived in the name of the legal heirs of said plaintiff, Nash, or their devisees or legal heirs or vendees."

But the court refused to instruct the jury as requested by the defendant in instructions No. 1, 12 and 13 above set forth, and also refused to give instructions 2, 6, 8 and 10 as offered, and in lieu thereof gave the following:

"2. The court tells the jury that the plaintiffs, in order to recover, upon the theory of a paper title without regard to possession thereunder, must show a complete legal title in themselves before the institution of this suit.

"6. The court tells the jury that the plaintiffs in this case must remove every probability of an outstanding, subsisting title in another or others before they can recover upon the strength of their legal paper title without regard to possession thereunder.

"8. The court tells the jury that if they believe that the plaintiff, Aaron H. Nash, and those claiming under him, did not have adverse possession of the lands in controversy for 15 years prior to the commencement of this suit, exclusive of the period from April 17, 1861, to 1st January, 1869, under

the title bond from Wm. Nash, attorney, dated 1860, then the jury will not consider said title bond further, except for the purpose of showing or tending to show that said Nash was in the actual possession of said land at the time James Wright entered thereon.

"10. The court tells the jury that if they believe James Wright used and claimed the land in dispute as real estate, and attempted to sell the land and not merely his improvement, then a writing was necessary before Aaron H. Nash could compel a conveyance of same from Wright under a contract of sale. But he might transfer an improvement claim and possession without a writing."

To this action of the court in refusing to instruct the jury as requested, and in modifying instructions 2, 6, 8 and 10 the defendants excepted.

After the verdict was rendered the defendant moved the court to set aside the verdict because the same was contrary to the law and the evidence, and was not supported by the law and "because of alleged divers errors of law committed by the court in the trial of this cause;" which motion the court overruled, and entered judgment for the plaintiffs, to which action of the court the defendants excepted.

*Daniel Trigg* and *Hobart Miller*, for the plaintiff in error.

*A. J. & S. D. May, Chapman & Gillespie,* and *Fulton & McDowell,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

This is an action of ejectment instituted in the Circuit Court of Wise county by Aaron H. Nash against James Wright for the recovery of a certain tract of land described in the declaration. Nash died, and the suit was revived in the name of his devisees, as plaintiffs. James Wright, the defendant, died, and the suit was revived in the name of his heirs at law,

and at a subsequent term the Virginia & Tennessee Coal & Iron Co. was, upon its petition, admitted a party, and is the active and substantial defendant. The case was tried before a jury, and a verdict and judgment rendered for the plaintiffs. During the progress of the trial a number of exceptions were taken, and the defendant applied for and obtained a writ of error from this court.

The first assignment of error is taken to the action of the court in permitting certain of the defendants from whom the Va. & Tenn. Coal & Iron Co. had purchased to confess judgment in favor of the plaintiffs.

There may be cases where defendants, conspiring with the plaintiffs to defraud and injure their co-defendants, would be denied the right. We say there may be such cases, though we know of none, and certainly this case is not one of them. There is nothing upon the record to suggest that the defendants confessing judgment were induced to do so by any improper motive, nor by any desire to injure or embarrass their vendee and co-defendant, the Va. & Tenn. Coal & Iron Co. If, recognizing the infirmity of their case, and unwilling to incur the cost and annoyance of an unavailing defense, they preferred frankly to recognize the plaintiffs' demand, they not only had the right to do so, but it was right in them to do so, and for it they are rather to be commended than criticised.

The second assignment of error is that the court erred in allowing plaintiffs to offer in evidence the record in the case of James Campbell against the unknown heirs of Richard Smith for the purpose of using as evidence certain exhibits contained in the said record, and for no other purpose, as set out in defendants' bill of exceptions No. 1.

There was no error in this. The evidence was admitted as tending to prove title, and was proper, if accompanied by proof of possession under claim of color of title. Evidence tending to prove possession is abundantly supplied by the

record. But even though the court erred in admitting the record when offered by the plaintiff, that error was cured by the defendants when they themselves at a subsequent stage of the cause offered the same record in evidence. If the action of the court in permitting this record to be read at the instance of the plaintiff were now held to be erroneous it would not affect the record as it was presented in the trial before the jury for it would still be in evidence upon the motion of the defendant. This assignment is not well taken. *Rich* v. *Rich*, 16 Wendell, at p. 666; *Edington* v. *Mutual Life Ins. Co. of N. Y.*, 67 N. Y., at p. 192.

The third assignment of error is that the court erred in allowing the plaintiffs to offer in evidence the deed from Richard Smith to John Warder and others, for the purpose of supplying a link in the chain of their title by means of the recital contained in said deed.

In *Carter* v. *Robinett*, 33 Gratt., at page 429, it will be seen that this court passed upon this identical objection, and, without going into any discussion of the subject we are content to rely upon that case as authority for over-ruling the objection now made.

Assignment of error number four is to the action of the court in permitting the plaintiffs to offer in evidence a deed from John Bickley to James Campbell purporting to have been made in pursuance of a decree entered in the suit between Campbell and others, and the administrator and heirs of Luke Wheeler.

The principal objection, indeed the only one that requires consideration, is that the deed from Bickley, commissioner, was never approved by the court. It appears that the decree under which the commissioner acted directed him "to make sale of all the right, title and interest of Luke Wheeler conveyed by deed of trust executed by Wheeler to John Williams and S. Whitehead on the 8th day of October, 1824." By the decree of sale the commissioner was not only directed to

sell the land, but upon compliance with the terms of the sale to make a deed to the purchaser. The report of the commissioner shows that on the 12th day of January, in the year 1856, he offered the property for sale in accordance with the terms of the decree; that James Campbell became the purchaser, and that the commissioner, as required by the decree, executed to James Campbell a deed conveying the property sold to him and took from him a deed of trust to secure the unpaid purchase money. This report was by a subsequent decree duly confirmed, no exception having been taken thereto. To say that the report of the deed was confirmed, but not the deed itself, is somewhat hypercritical.

What has been said with respect to the fourth assignment of error disposes also of the fifth, as they appear from the petition to be practically the same.

The sixth assignment of error is to the action of the court in permitting the plaintiffs to offer in evidence a deed from James Campbell by William H. Burns, his attorney in fact, to Aaron H. Nash, without satisfactory explanation of the interlineations and defacement of the deed, and without proof of its execution, the acknowledgment being informal.

The so called interlineations and defacement in the deed, and the alleged informality, are immaterial and wholly insufficient to warrant its exclusion. 1 Greenleaf on Ev., (14th Ed.), sec. 564; 1 Wharton on Ev., sec. 629; Stephen's Dig. of Ev., Art. 89; *Little* v. *Herndon*, 10 Wall., at page 31; and *Keen's ex'or* v. *Monroe, &c.*, 75 Va., at page 427.

The seventh assignment of error is virtually disposed of by what has already been said with respect to bill of exceptions number one, and need not be further considered.

The eighth assignment of error was withdrawn by the plaintiff in error.

The ninth assignment of error is to the action of the court in refusing to allow defendants to offer in evidence a deed from Campbell and others to the Va. & Tenn. Coal & Iron Co., for

the purpose of showing a superior outstanding title in defendant.

The deed is a quit claim deed, with a covenant of special warranty, and purports to convey "such interest only as they (the grantors) now have, whatever that may be, in the aforesaid lands."

In Dembitz on Land Titles it is said: "Where the intent to trade on whatever interest the grantor may have can be gathered from the whole instrument, the grantee will be postponed to an unrecorded deed."

In Devlin on Deeds it is said: "But even in States where a quit-claim deed is recognized as an effectual mode of transferring the title of the grantor, and is accorded the same privileges under the registry law as a deed of bargain and sale, yet if it appears by the deed of quit-claim that the grantor intended to convey only such land as he owned at the time of its execution, the lands embraced in the prior operative conveyance are reserved from the operation of the quit-claim deed, and title to such previously conveyed lands will not pass by the deed of quit claim, notwithstanding that the prior deed remains unrecorded." Sec. 674. To the same effect, see 1 Warvell on Vendors, sec. 5, at page 337. This objection is not well taken.

The tenth assignment of error is to the refusal of the court to exclude the record as offered in evidence by the plaintiffs in the suit of James Campbell against the unknown heirs of Richard Smith.

This is stated by the petitioner to be practically the same question raised by bill of exceptions number one, and it must share the same fate.

After the evidence was concluded the plaintiff asked the court for four instructions.

We think that the four instructions given by the court, upon the request of the plaintiff, correctly state the law, and we are also of opinion that the court did not err in refusing cer-

tain instructions asked for by the defendants, and in giving others, with modifications. Upon the whole we are of opinion that the law was fairly expounded to the jury. The whole case, indeed, when carefully considered, leaves no doubt that it was correctly decided in the court below. The paper title as shown by the plaintiff is complete, possession under it was held by the plaintiffs and those under whom they claim for a long period prior to the institution of the suit, and, by purchase of the improvement claim from James Wright, through whom the defendants undertook to deduce title, the plaintiffs were clothed with whatever right of possession may have existed in him, and his subsequent return to the property in dispute placed him in the attitude of a naked trespasser who acquired no right, and could therefore transmit none.

After the verdict had been rendered, and the judgment entered thereon, the defendants moved in arrest of judgment because the court erred in requiring defendants to file the particulars of their defence; and secondly, because the court erred in refusing to require plaintiffs to file particulars of their ground of recovery.

As to the propriety of requiring the defendants in an action of ejectment to file the particulars of their defence, inasmuch as the plaintiffs must recover upon the strength of his own title, we express no opinion, but we think the court properly overruled the motion in arrest of judgment, as that is not the proper method of raising the question which the defendants desired to present. It should have been done by a bill of exceptions, but as far as the record shows no objection was taken to the action of the court when the motion for a bill of particulars was passed upon, and we think it is too late after a verdict and judgment.

Upon the whole case, we are of opinion that the record discloses no error to the prejudice of the defendants, and the judgment of the Circuit Court of Wise county must be affirmed.

*Affirmed.*