# Richmond

## STEPHEN PUTNEY SHOE COMPANY v. RICHMOND, FREDERICKSBURG AND POTOMAC RAILROAD COMPANY.

### March 12, 1914.

### Absent, Cardwell, J.

1. EASEMENTS—*Deeds—Construction—Ambiguous Words.*—Where an easement has been granted or reserved by deed, the ordinary rule which governs in the construction of other writings prevails, namely, that the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source. But where its language is ambiguous, the court, in order to ascertain the intention of the parties, looks to the language employed in the light of the circumstances surrounding the parties and the land, at the time the deed was executed.

2. DEEDS — *Construction—Prior Unrecorded Contract—Notice.*—The grantee of all the right, title and interest of the grantor in a lot of land, acquires only such right, title and interest as his grantor had and no more, and is chargeable with notice of, and is bound by, a prior unrecorded contract between his grantor and a third person.

3. DEEDS—*Prior Contract—Merger—Difference in Language.*—Where an executory contract for the sale of land has become merged in a deed, but the language of the two instruments is materially different, if the difference in language was the result of a change of intention of the parties, it must be presumed that the language of the deed was deliberately chosen and every part of the instrument must be made to take effect and every word to operate in some way or other, if possible. If the change was not the result of a new agreement between the parties, then it must be treated as the language of the grantors and construed most strongly against them, and they must be considered as having intended to grant, by the language of the deed, all that the language they employed was capable of passing to the grantee.

4. DEEDS—*Prior Contract—Merger—Difference in Language.*—Where

an executory contract for the sale of land is followed by a deed made in pursuance thereof, all prior negotiations, including the executory contract, are merged in the deed, and, although the provisions of the deed as to an easement over adjacent lands of the grantor are different from those of the contract, the deed must be looked to for the purpose of determining the rights of the parties to it, and the grantee acquires only such rights and privileges in such easement as are granted by the deed.

5. DEEDS—*Construction of Written Instruments—General and Particular Words.*—Where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those described. This rule, however, seems to be applicable for the most part to cases where particular words are followed by the general and not where the general are followed by the particular.

6. DEEDS—*Construction of Written Instruments—General and Particular Words.*—Where particular words exhaust the class, the general words must be constructed as embracing something outside of that class. If the particular words exhaust the genus there is nothing *ejusdem generis* left, and, in such case, the general words must be given a meaning outside of the class indicated by the particular words or they must be declared to be meaningless and thereby the general will be sacrificed to preserve the particular words. In that case, the rule would defeat its own purpose.

7. DEEDS—*Construction—Easements—Case in Judgment.*—Constructing the language of the deed, in the case in judgment, in the light of the surrounding circumstances and the situation of the parties, the covenant in the deed to the appellant that the twenty seven foot strip (adjacent to the land conveyed) "shall be kept open as an open space, and the said party of the third part (appellant) shall at all times have free use of said twenty seven (27) foot lot, with full egress and ingress in, to and through the said lot and all parts thereof", conferred upon the appellant not only a right of ingress and egress in, to and through the said lot, but gave it the right to have the said lot kept open as an open space, and at all times to have the free use of the twenty seven foot lot for any reasonable purpose in the enjoyment of the lot purchased, and, in the use of said strip for loading and unloading its wagons, is not obliged to so use it as not to prevent other wagons from passing through the same in single file. Neither the grantor of appellant nor his subsequent grantee

can exercise any rights over the said strip of ground which interfere or are inconsistent with the said uses of appellant, nor have they the right to the use of said strip for any purpose which will, in anyway, limit or interfere with appellant in the full enjoyment of the easement granted it.

8. EASEMENTS—*Enclosure—Deeds.*—The grantee of an easement such as is mentioned in the preceding paragraph has no right to enclose the land over which the easement is granted.

Appeal from a decree of the Circuit Court of Henrico county. Decree for the defendant. Complainant appeals.

*Reversed in Part.*

The opinion states the case.

*Allen G. Collins* and *Samuel A. Anderson,* for the appellant.

*Braxton & Eggleston,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

Two questions are involved in this appeal—one as to the rights of the parties, the Stephen Putney Shoe Company (hereinafter in this opinion designated as the shoe company) and the Richmond, Fredericksburg and Potomac Railroad Company (hereinafter called the railroad company), in a twenty-seven foot strip of land lying east of the shoe company's land, and the other as to the rights and obligations of the parties as to the location of a right of way for a railway leading to the shoe company's property over the railroad company's land and the tracks laid thereon.

On the 8th day of December, 1903, Williams, surviving trustee, and the Fair Grounds Company of Richmond conveyed to the shoe company a parcel of land, situated near the western limits of that city, fronting on the north

line of Broad street, commencing at a point twenty-seven feet west of the eastern line of the lands owned by the Fair Grounds Company, of which the land sold was a part, running westwardly 300 feet along the north line of Broad street, thence running back between parallel lines 299 1-3 feet. The shape and location of the land of the Fair Grounds Company and of the parcel conveyed to the shoe company (the square at the southeast corner) are shown by the diagram or plat below:

[For diagram, see page 215, following.]

On the 14th of September, 1904, the Fair Grounds Company and Williams, trustee, conveyed the residue of the fair grounds land to the railroad company, except the 27 foot strip. Afterwards, on the 28th of that month, the said grantors of the railroad company conveyed to it all their right, title and interest in said strip.

The controversy between the parties as to their rights in and over that portion of the 27 foot strip adjoining the land conveyed to the shoe company arises out of a provision contained in the deed to that company, which is in the following language:

"As a part consideration of this deed said Fair Grounds Company covenants that the said strip of land just east of and adjoining the lot hereby conveyed and fronting twenty-seven (27) feet on the north line of Broad street and running back two hundred and ninety-nine feet, four inches (299 ft. 4 in.) *shall be kept open as an open space and the said party of the third part shall at all times have free use of said twenty-seven (27) foot lot, with free ingress and egress in, to and through said lot and all parts thereof."*

The contention of the shoe company is that under the provision quoted it not only has the right of ingress and egress in, to and through the said strip and all parts thereof, but is expressly and specifically granted the free

use thereof for any and all reasonable purposes. The shoe company alleges in its bill, that, claiming and recognizing its rights to have said 27 foot lot of land kept open as an open space with free use thereof by this plaintiff, it accordingly planned its house, with a large door opening from said house upon said strip of land, for the purpose of receiving and delivering goods by wagons, knowing that it would be uninterrupted, and it did not provide any other place for receiving and delivering goods by wagon, and in addition to this, it planned its house with fifteen windows opening upon said 27 foot strip of land, and this would entail considerable loss and expense, if said strip of land is thrown open as a public passage way by reason of the dust and dirt that would be continually stirred up, and especially because said door for shipping is from the nature of the business kept open at nearly all times.

The contention of the railroad company, on the other hand, is that the said deed conferred on that company "merely 'the free use' of said 27 foot strip *for the purpose of* 'free ingress and egress in, to and through' the same and all parts thereof; and that this respondent is entitled to make or permit other persons to make any use of said strip which does not prevent complainant from a reasonable use of the same for the purpose aforesaid, and also to insist that the said strip shall be kept open as an open space."

Soon after its purchase it seems that the shoe company erected a warehouse building upon and almost entirely covering its said lot, and that for some years it has been using the 27 foot strip of land in going to and from its property, in standing its wagons, 26½ feet in length, upon the strip and which extend almost entirely across it, for the purpose of loading and unloading its goods into and from its warehouse, and that during that time the strip has been fenced in and used exclusively by the

shoe company and has never been used by the railroad company, its patrons or the public in any manner. The use made of the strip by the shoe company and the non-use of it by the railroad company seem to have been largely, if not entirely, by the express or implied consent or assent of the parties, and can, therefore, have but little if any effect in determining the proper construction of the provision above quoted in the shoe company's deed.

Where an easement has been granted or reserved by deed, the ordinary rule which governs in the construction of other writings prevails, namely, that the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source. But where its language is ambiguous, the court in order to ascertain the intention of the parties looks to the language employed in the light of the circumstances surrounding the parties and the land at the time the deed was executed. Goddard on Easements (Bennett's Ed.), p. 275; *Bank of Old Dominion* v. *McVeigh,* 32 Gratt. (73 Va.) 530; *Allemong* v. *Gray,* 92 Va. 216, 23 S. E. 298.

At that time the Fair Grounds Company owned no lands east of the 27 foot strip and had access to its lands which it subsequently sold to the railroad company from Broad street, on the south, and Marshall street, on the east. There were no railroad tracks or yards upon its lands, and under its charter it had no authority to operate such a road. By the executory contract of sale and purchase between the Fair Grounds Company and the shoe company, the former company agreed "to keep open as a street" the 27 foot strip. Afterwards when that contract was specifically executed by a conveyance, the provision in the contract that the said strip should be kept open as a street was omitted, and in lieu thereof there was inserted in the deed the provision that the strip

"shall be kept open as an open space and the said party of the third part (the shoe company) shall at all times have free use of the twenty-seven (27) foot lot, with free ingress and egress in, to and through said lot and all parts thereof."

In construing that language in the light of the surrounding circumstances and the situation of the parties, it is insisted by the railroad company that the provision in the executory contract as to the 27 foot strip cannot be looked to, because that contract was never recorded and the railroad company was a purchaser for value without notice of it. The railroad company having acquired from the Fair Grounds Company only such right, title and interest as its grantors had in the 27 foot lot, it acquired no greater rights therein than they had. This being so, the fact that the executory contract was not recorded no more prevents the court from considering it in construing the language of the deed subsequently made to the shoe company than if the controversy was between it and its grantors. *Va. & Tenn. &c. Co.* v. *Fields,* 94 Va. 102, 114-115, 26 S. E. 426; 2 Devlin on Real Estate, secs. 674-675.

If the provision in the deed as to the 27 foot strip and which differs materially from that contained in the executory contract, was the result of a change in the intention of the parties, it must be presumed that the language of the provision in the deed was deliberately chosen. If this be so, it furnishes an additional reason for the application of that rule of construction which requires that every part of a contract must be made to take effect and every word to operate in some way or other if possible. *Mays* v. *Phil. Text Co.,* 105 Va. 486, 488, 53 S. E. 967 and authorities cited.

If the insertion of that provision in the deed in lieu of that in the executory contract as to the 27 foot strip was not the result of a new agreement between the parties,

then it must be treated as the language of the grantors and construed most strongly against them, and they must be considered as having intended to grant by the provision in the deed all that the language they employed was capable of passing to the shoe company. *Wilson, Trustee,* v. *Langhorne,* 102 Va. 631, 637, 47 S. E. 871.

It is true as argued that when the shoe company accepted the deed from the Fair Grounds Company, all prior negotiations including the executory contract were merged in the deed, and although its provision was different from that contained in the executory contract as to the 27 foot strip, the deed must be looked to for the purpose of determining the rights of the parties to it, and that the shoe company only acquired "such rights and privileges" in the 27 foot lot as are granted by the deed.

If the language of the deed as to what those rights and privileges are was clear, of course there would be no necessity for and no right to consider anything *aliunde* the deed to ascertain the intent of the parties. But, as before stated, where the language of the deed is ambiguous, the court should construe its meaning in the light of the circumstances surrounding the parties and the land at the time the deed was made.

It is insisted by the railroad company that the court, in construing the provision in question, should restrict the meaning of the general words by the more specific and particular description which follows. While this rule has been frequently applied in the construction of deeds and other writings, we do not think that it is applicable to the provision in question. If it were, the effect would be not to restrict the meaning of the general words, but to render them mere surplusage, or without any meaning.

In the cases of *Allemong* v. *Gray,* 92 Va. 216, 23 S. E. 298 and *Richmond Ice Co.* v. *Crystal Ice Co.,* 99 Va., 239,

37 S. E. 851, the decisions of this court relied on by the railroad company, the application of the rule of construction invoked did not render meaningless the general words, but merely restricted or limited their meaning.

The principle of construction invoked in this case is somewhat like the rule of construction sometimes known as Lord Tenterdon's that where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those described—*ejusdem generis.* This rule, however, seems to be applicable for the most part to cases where the particular words are followed by the general and not where the general are followed by the particular. Sedgwick on Constr. of Stat. (2nd ed.) 360, 361; Sutherland on Stat. Constr., sec. 268; *U. S.* v. *Mescall,* 215 U. S. 26, 30 Sup. Ct. 19, 54 L. Ed. 77; *People* v. *Richards,* 108 N. Y. 137, 148, 15 N. E. 371, 2 Am. St. Rep. 373, 2 Sugden on Vendors (Perkins' ed.) 280, cl. 3; *Allemong* v. *Gray, supra; Am. Mang. Co.* v. *Va. Mang. Co.,* 91 Va. 272, 281, 21 S. E. 466.

While it is aimed by that rule, as was said by the Supreme Court of the United States in the case of *U. S.* v. *Mescall, supra,* pp. 31-2, quoting from the opinion in *Bank of Commerce* v. *Ripley,* 161 Mo. 126, 132, 61 S. W. 587, 588, "to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the genus there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words or we must say that they are meaningless and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose."

Sutherland in discussing this subject (Suth. St. Constr. sec. 278), says, that "where the result of thus restraining the general words would be that they would have no effect at all, they must be extended to things superior in quality to those enumerated." See also sec. 279; *Gillock* v. *The People,* 171 Ill. 307, 49 N. E. 712.

Where general descriptions are followed by particular descriptions in a deed, the latter will not restrict the former, if they have been used in the sense of reiteration, or affirmation. *Bolt* v. *Burnett,* 11 Mass. 163, 169; *Piper* v. *True,* 36 Cal. 606; *Barney* v. *Miller,* 18 Iowa 460, 466.

It would be much more reasonable to hold that the particular words in question were used not in the sense of restraining the general words, but for the purpose of reiteration or affirmation of the most important right and privilege embraced within the general description.

In this case, if it were held that by the provision in question the only rights and privileges acquired by the shoe company in the 27 foot lot by its deed were to have it left open as an open space, with the right of ingress and egress in, to and through the same at all times, it would render the general words, that the shoe company "shall at all times have the free use" of said strip, mere surplusage, or limit their meaning to such right of way although they are sufficiently comprehensive to include in addition to such right of way other uses beneficial to the shoe company in the use of its lot. The effect of such a construction would be to hold that the general words deliberately chosen by the parties, or, if not, inserted in the deed by the grantors themselves in lieu of the provision in the executory contract of sale, were to be treated as meaningless or mere surplusage, thus giving the provision in question a construction most favorable to the grantors, instead of to the grantee, as the rule requires where the language is ambiguous, without anything in the language of the deed or the surrounding cir-

cumstances to justify it. If the general words of the grant, that the shoe company "shall at all times have the free use of the twenty-seven foot (27) lot" be given their usual meaning as they must be, then it is clear that the shoe company is entitled to the free and unobstructed use of the 27 foot lot for purposes other than the mere right of egress and ingress over it. There is nothing in its deed to the shoe company which shows that it intended to reserve any use in the 27 foot lot which would limit or disturb the full and unrestricted enjoyment of the easement granted. One of the uses which the shoe company has been making of the 27 foot lot since the erection of its warehouse has been to have the wagons (26½ feet long) regularly used in its business, and in which its goods are hauled to and from its warehouse, stand with their rear ends next to the warehouse door for convenience in loading and unloading, and extending out into and nearly across the said 27 foot lot, thereby at times, and perhaps much of the time, preventing other vehicles from passing. The railroad company claims that it, its agents, employees and patrons have the right to the uninterrupted use of the 27 foot strip in going to and from Broad street to the railroad company's tracks located on or adjacent to the lands purchased by it from the Fair Grounds Company. At the time of the purchase of the shoe company from the Fair Grounds Company the latter company owned no lands east of the 27 foot strip, and had access to its lands which it subsequently sold and conveyed to the railroad company both from Broad street and Marshall street. The railroad tracks mentioned were placed upon the land since the railroad company's purchase from the Fair Grounds Company. The use which the railroad company desires to make of the 27 foot strip is practically to make it a highway between Broad street and the railroad company's tracks. If any such use had been intended by the parties, why was the

provision in the executory contract of sale, that the said 27 foot strip should be kept "open as a street," left out of the deed and a provision in lieu thereof inserted which manifestly enlarged the rights of the shoe company, did away with any right in the public and limited the rights of the Fair Grounds Company to such use only as did not interfere with or obstruct at any time the rights granted to the shoe company? In a street the parties would have had equal rights. Under the provision in the deed it is conceded that the rights of the shoe company, whatever they be, are superior to those of the Fair Grounds Company or the railroad company.

The court is of opinion that the provision in the deed by which the Fair Grounds Company agreed and covenanted that the 27 foot strip "shall be kept open as an open space and the said party of the third part shall at all times have free use of said twenty-seven (27) foot lot, with free ingress and egress in, to and through said lot and all parts thereof," conferred upon the shoe company not only a right of ingress and egress in, to and through said lot, but gave it the right to have the said lot kept open as an open space and at all times to have the free use of the 27 foot lot for any reasonable purpose in the enjoyment of the lot purchased; and that the railroad company cannot exercise any rights over the said lot which interfere or are inconsistent with the said uses of the shoe company; and that the trial court erred in holding that the shoe company in using said strip in loading and unloading its wagons must so use the lot as not to prevent other wagons from passing through the same in single file; and that the railroad company, its agents, employees and patrons had no right to the use of the lot for any purpose which would in any manner limit or interfere with the shoe company in the full enjoyment of the easement granted it.

The purpose contemplated by the grant was the crea-

tion of an easement for the shoe company's use and not the reservation to the Fair Grounds Company of the use of the lot. Every use by the owner was abandoned, except such as might be made in a mode entirely consistent with the full and undisturbed enjoyment by the shoe company of its easement. The idea of the joint use of the lot by the Fair Grounds Company and the shoe company in the sense that a use by the shoe company should give way to a use by the grantors or those who claim under them, is contrary to the plain meaning of the grant. *Herrman* v. *Roberts,* 119 N. Y. 37, 23 N. E. 442, 7 L. R. A. 226. 228, 16 Am. St. Rep. 800.

The grant in question is not the case of a mere right of way, where the owner of the soil may do any acts which do not interfere with the enjoyment of that easement, but it is a right to have the 27 foot strip kept open as an open space, as a court.. While the right of ingress and egress was no doubt one of the chief uses, if not the chief use, contemplated, still the shoe company had the right to have the space kept open, also, for light, air and view, and every other accommodation and advantage which such an open space or court might furnish to its property. *Schwerrer* v. *Boylston Market Asso.,* 99 Mass. 285, 292-3.

The court is further of opinion that the trial court properly held that the shoe company did not have any right to enclose the 27 foot strip, or any part, or either end, thereof.

The other provision of the deed as to which the parties differ is as follows:

"The said parties of the first and second parts covenant and agree that they will permit said party of the third part and its assigns to use a strip of land forever for the purpose of constructing thereon one or two railroad tracks running from the main line of the Richmond, Fredericksburg and Potomac Railroad Company, to the

said property hereby conveyed to the said party of the third part. Said strip of land to be selected and designated by the parties of the first and second parts across its lands. Said party of the second part covenants and agrees to construct or cause to be constructed and completed one or two tracks, when called for by said party of the third part, from the said main line of Richmond, Fredericksburg and Potomac Railroad across said strip of land to the north line of the property hereinbefore conveyed to said party of the third part, for the use of the said party of the third part and its assigns and then to connect with the tracks placed by said party of the third part upon their lot so purchased.''

After the purchase of the residue of the lands of the Fair Grounds Company by the railroad company, it and the shoe company entered into an agreement in 1906 for the construction and operation of certain railroad tracks leading from the shoe company's property to the main line of the railroad company. By that agreement it was provided, among other things, that the acceptance of the tracks agreed upon should be in lieu of the right of the shoe company, under its deed from the Fair Grounds Company, to have two tracks as therein provided during the existence of the 1906 agreement, but on the termination of that agreement the shoe company was to be remitted to all of its rights under its deed as if that agreement had not been made. That agreement was to continue two years from its date and thereafter until terminated by either party giving notice in writing sixty days prior to a time designated for a termination thereof. Such notice was given and that agreement terminated on the first of July, 1908.

Three objections are made to the decree of the trial court defining the rights and obligations arising out of the deed of the Fair Grounds Company to the shoe com-

pany as to the right of way for the railroad tracks and the said agreement of 1906 between the railroad company, the assignee, etc., of the Fair Grounds Company and the shoe company. The first is that the court erred in holding that the railroad company still had the right to select and designate the location and course of the said right of way upon which the railroad tracks could be placed. The second is that the court erred in holding that so long as the existing tracks (leading to the land of the shoe company) shall remain in their present location, the railroad company shall continue to serve other patrons of the railroad as well as the shoe company over the said tracks—instead of using such tracks for the exclusive benefit of the shoe company. The third is that the court erred in providing that the costs and expenses of grading and constructing a roadbed and placing thereon the proper equipment shall be paid by the shoe company.

Without discussing these objections to the decree in detail it is sufficient to say that the court is of opinion that the decree of the court upon this branch of the case is not erroneous in either of the respects named, and that its various provisions correctly and carefully define the rights and obligations of the parties in respect to the right of way for railroad tracks upon the railroad company's land.

The decree appealed from, in so far as it determines the rights and obligations of the parties as to the location of a right of way for a railway leading to the shoe company's property over the railroad company's land and the tracks, etc. laid thereon, must be affirmed; but in so far as it determines the rights of the parties in the 27 foot strip of land, it must be reversed, and this court will enter such decree as the trial court ought to have entered.

*Reversed in part.*