GRAHAM *v.* QUARLES.

4-7192                                                        176 S. W. 2d 703

Opinion delivered January 10, 1944.

*O. C. Brewer* and *Geo. K. Cracraft,* for appellant.

*Dinning & Dinning,* for appellee.

KNOX, J. On January 22, 1928, Clarence Quarles, being then the owner thereof, conveyed the real property involved in this controversy to his daughter, appellant, Josie Quarles Graham. Some two months thereafter, to-wit, on March 26, 1928, John M. Quarles made, executed and delivered to his wife, appellee, Virginia G. Quarles, a deed by which for a recited consideration of $1,000 he did "grant, bargain, sell and convey unto the said Virginia G. Quarles, and unto her heirs and assigns forever, the following tracts, lots or parcels of real estate, situated in Phillips county, Arkansas, to-wit: All my right, title and interest in and to"—then follows a description of lands, which the parties agree are the same as those conveyed by Clarence Quarles to his daughter, the appellant, on January 22, 1928.

Clarence Quarles died June 6, 1930, leaving surviving him as his only heirs at law his daughter, the appellant, and his son, John M. Quarles, husband of appellee, and brother of appellant.

On June 17, 1930, ten days after the death of their father appellant conveyed to her brother an undivided one-half interest .in the lands conveyed to her by their father on January 22, 1928. This deed recited that it was executed "for the purpose of effecting a division of the lands . . . in accordance with the interests of the respective parties."

On February 19, 1943, appellee, Virginia G. Quarles, instituted this suit against appellant, Josie Quarles Graham, seeking partition of the lands, and among other things alleged in her complaint "that the said Virginia G. Quarles and Josie Q. Graham are owners and tenants in common" of the lands involved.

Answer and cross-complaint filed by appellant specifically denied that Virginia G. Quarles was the "owner of an undivided half interest in the real estate set forth in the complaint," and contained allegations to the effect that: (1a) the deed executed by Clarence Quarles to appellant was made to her as trustee to secure an indebtedness due by her father to her husband, Edgar Graham; (1b) at the time of the conveyance to her brother, John M. Quarles, he was fully informed as to the existing debt in favor of Edgar Graham, and the trust relationship occupied by appellant, and that he accepted said conveyance subject to the lien of the indebtedness due to Edgar Graham; (2) that from time to time between the date of the conveyance by appellant to John M. Quarles on June 17, 1930, to the date of the filing of the answer and cross-complaint appellant and her husband, Edgar Graham, had made certain advancements to John M. Quarles, which he agreed should constitute a lien against the one-half interest in the property so conveyed to him by appellant on June 17, 1930, and that appellee, Virginia G. Quarles, was at all times cognizant of such agreements and understandings, and fully acquiesced therein to such an extent that she would be estopped to assert that such understandings and agreements were not binding as against her interest in such property; (3) that in 1934, by agreement of the parties, appellant was put in complete control and possession of the property, for the

purpose of operating the same and satisfying the indebtedness due by John M. Quarles to appellant and her husband, Edgar Graham, and that since that time she has been, and is now, in possession thereof under such agreement; (4) attached to the cross-complaint, as an exhibit thereto, there appears a statement of accounts headed "Edgar and Josephine Quarles in account with estate of Clarence Quarles, John M. Quarles, and Virginia Quarles." Such account purports to cover a period of time from June 23, 1930, to and including March 2, 1943. An examination of this account indicates that a great portion thereof is made up of items relating to rents and profits collected from, taxes paid on and sums expended for improvement, repair and upkeep of the property involved in this suit.

To this answer and cross-complaint appellee (plaintiff below) Virginia G. Quarles, filed a general demurrer, and the chancellor after consideration thereof sustained the same and, the appellant refusing to plead further, her answer and cross-complaint were dismissed and a decree directing a partition of said property and appointing commissioners to effect the same was entered. From this decree appellant has prosecuted this appeal.

In the case of *Phillips* v. *First National Bank of Van Buren*, 179 Ark. 605, 17 S. W. 2d 298, we quoted the language of Mr. Justice RIDDICK in the case of *Eagle* v. *Franklin*, 71 Ark. 544, 75 S. W. 1093, as follows: "'To entitle one to have partition of lands, he must not only have title, but must have possession, either actual or constructive, of the lands which he asks to have partitioned'." In the case of *Republic Power & Service Co.* v. *Gus Blass Co.*, 165 Ark. 163, 263 S. W. 785, the plaintiff's prayer for partition was denied on the ground that it had failed to establish title in itself to an undivided interest in the real estate involved in the controversy.

The rule announced by this court appears to be in conformity with the rule adopted by all courts which have had occasion to consider the question. At 47 Corpus Juris, p. 300, we find the following statement: "Title,

legal or equitable, in the person or persons seeking partition is essential to the maintenance of the suit. Where the record in a partition suit fails to show a good title in the parties to the property involved, partition will not be decreed notwithstanding the allegation of title by one party and its admission by the other.''

Many cases supporting, but none contrary to, the text appear in the footnotes.

If then only those having interest in the property may bring a suit for partition, it logically follows that it is necessary that the plaintiff allege that he holds title to an interest in the property, and such we find to be the universal rule, which is stated at 47 Corpus Juris, p. 403, as follows: ''Since only those having title are entitled to partition either in a court of law or equity and the title must be to an undivided interest in the land, it is necessary for the bill, complaint, or petition to allege title in plaintiff, and that such title is to an undivided interest in the lands sought to be partitioned.''

Counsel for appellee fully recognizing that an allegation that she was the owner of an undivided interest in the tracts of land was essential to the bringing and maintenance of her suit did include such an allegation in the complaint. Appellant specifically denied this allegation. Thus an issue was joined on a material fact in controversy. Thereafter appellee entered a general demurrer to both the answer and cross-complaint, and the trial court sustained the demurrer *in toto*.

Appellee in the court below attached to her complaint as exhibits thereto copy of the deed from her husband, John M. Quarles, to her, dated March 26, 1928, and, also, copy of the deed from appellant, Josephine Q. Graham, to John M. Quarles, dated June 17, 1930. The complaint contains no specific allegation that appellee's title is founded upon these two deeds, but such fact appears to be accepted by all parties to the litigation as true.

Much argument of counsel is directed to the question as to whether the deed from her husband to appellee

is a warranty deed or a quitclaim deed. For reasons which we will later state, we are of the opinion that the question is not controlling here. The question is injected into this litigation because of the fact that if appellee's title is founded upon the two deeds set out as exhibits to her complaint, then of necessity she must depend upon § 1798 of Pope's Digest (being the so-called After Acquired Title Statute) in order to perfect her title.

There are many decisions of this court holding that this statute has no application where the instrument of conveyance relied on is a quitclaim deed for the reason that a quitclaim deed does not purport to convey any title except such as the grantor had at the time of its execution. *King* v. *Booth,* 94 Ark. 306, 126 S. W. 830; *Wells* v. *Chase,* 76 Ark. 417, 88 S. W. 1030; *Lucadoo* v. *Hirsch & Co.,* 203 Ark. 792, 158 S. W. 2d 697.

The instrument of conveyance here bears no caption indicating its character either as a warranty or a quitclaim deed, and there are no specific words of warranty contained in the body of the instrument, but we have heretofore quoted the words of conveyance which do include the words "grant, bargain and sell," which words when contained in an instrument of conveyance without other words of limitation import a warranty. (Pope's Digest, § 1795.) The language employed in the deed from John M. Quarles to appellee is almost identical with the language contained in a deed which was considered by this court in the case of *Reynolds* v. *Shaver,* 59 Ark. 299, 27 S. W. 78, 43 Am. St. Rep. 36. There the grantors for a recited consideration of $1,000 did "grant, bargain and sell" unto the grantee, "all our right, title, claim and interest" in and to certain tracts of land situated in Randolph county, Arkansas. In that case the deed contained a warranty clause which does not appear in the deed here under consideration. The title of grantee having failed, suit was brought to recover on the alleged warranty, and the court held that the deed was a quitclaim and not a warranty deed. Mr. Justice HUGHES, speaking for the court, said: "It appears, from the language in the granting part of the deed, that Shaver and wife intended to

convey only their 'right, title, claim and interest' in the land, and that they intended only to 'warrant and defend the same.' This is the legal import of their warranty; that is, that they would warrant and defend such 'right, title, claim and interest' as they had in the land at the date of their conveyance, which was all they had conveyed. The conclusion that such was their intention seems apparent from the language of the conveyance, and is strengthened by the facts that Reynolds, as administrator of the estate of Kelsey, had conveyed this land to Shaver while it was a homestead and could not legally be sold by the administrator. The conveyance of Shaver and wife to Reynolds was, therefore, nothing more than a quitclaim deed.''

It is true that in the later case of *Jackson* v. *Lady,* 140 Ark. 512, 216 S. W. 505, the court had before it a deed similar in some respects to the one in *Reynolds* v. *Shaver, supra,* and there, by a divided court, the two cases were distinguished and it was held that because of certain recitals in the deed in the Jackson case which did not appear in the deed in the Reynolds case the latter deed was a warranty and not a quitclaim deed. The opinion in that case was written by Mr. Justice Wood, and Chief Justice McCulloch dissented. The words contained in the deed in the Jackson case do not occur in the case at bar and that case furnishes no ground for a different rule than the one originally announced in *Reynolds* v. *Shaver.* We are of the opinion that the case of *Reynolds* v. *Shaver, supra,* is controlling, and that the deed here under consideration constituted a quitclaim and not a warranty deed.

As we have heretofore stated, we do not regard the decision of that question as being controlling for of necessity there was set out in the complaint an allegation that appellee was the owner of an undivided one-half interest in the land and there was a denial in the answer of this fact. Even if the complaint had failed to allege how appellant acquired title it would have been good in the absence of a motion or other pleading requiring her to disclose. Likewise, an answer which denied that plaintiff

held title at the time of the filing of the suit put the matter in issue, whether accompanied by allegations as to how she failed to acquire, or having acquired, how she lost title. In other words, the allegation of ownership on the one hand and the denial of such allegation on the other hand was sufficient to make an issue, and the answer which joined issue upon this material fact was not subject to demurrer, and the chancery court erred in sustaining the demurrer thereto.

It is unnecessary and we do not undertake to determine whether demurrer to the whole, or any part, of the cross-complaint should have been sustained, since we have reached the conclusion that the chancery court erred in sustaining the demurrer to the answer.

On account of the error indicated, the decree of the lower court is reversed, and the cause is remanded for further proceeding not inconsistent with this opinion.

McHANEY, J., dissents.