# Richmond

Floyd M. Rhoton v. W. J. Rollins and Rufus Rollins, et al.

Myrtle Mitchell Cox v. W. J. Rollins, Rufus Rollins, et al.

April 21, 1947.

Records Nos. 3177, 3178.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

354

The opinion states the case.

*Richmond Bond, John R. Todd, Jr., Quillen & Carter* and *Burns & Lively*, for the appellants.

*E. Hagan Richmond,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

By deed dated October 2, 1939, Rollins and others conveyed to Rhoton a tract of 243.9 acres of land in Scott county, referred to herein as the Rhoton land, for a consideration of $4500, together with a right of way in this language:

"The said parties of the first part do hereby convey to the said party of the second part a right of way over the land of W. J. Rollins and Esther J. Rollins where the road now is to the public road, but it is only to be used by the said party of the second part or his successors in title when they are prevented in any way from using the right of way which they now use over the W. H. Mitchell estate."

These appeals present the question whether Rhoton may use the right of way granted by this deed or must use one over the Mitchell estate.

The land so conveyed is adjoined on the east by another tract owned by Rollins, herein called the Rollins land, and the public road runs along the eastern boundary of this Rollins land; that is, the Rollins land lies between the Rhoton land and the public road. West of the Rhoton land, and lying between it and the public road on that side, is the Mitchell land, now owned by Myrtle Mitchell Cox. Both of these roads lead to Rye Cove, to the south of the lands mentioned. The Rye Cove road approaches these lands from the south, divides a short distance southeast of them, and one fork goes to the right along the eastern border of the Rollins land, and the other fork goes to the left through the Mitchell land to the south and west of the Rhoton land.

Rollins bought the Rhoton land in 1938. He or his wife had then owned the Rollins tract for several years. There had been a road through the Rollins tract used by the former owners of the Rhoton land for access to the public road on the east, but it had been washed out or filled up by a storm in 1927. After Rollins bought the Rhoton land in 1938, he built another road over his own land to connect the Rhoton land with the public road. At the time of the sale to Rhoton there was also a road from the Rhoton land through the Mitchell land to the public road on that side.

After his purchase, Rhoton used the road through the Rollins tract, but not exclusively, sometimes going in and out over the Mitchell land. Rollins said he asked Rhoton two or three times not to use the road through his land "so as not to forfeit our rights" over the Mitchell land. Rhoton testified that he had regularly traveled over the Rollins tract without objection by Rollins for about five years and until some trouble arose between him and Rollins. In any event, about September, 1943, Rollins locked the gate on the road through his land and would not allow Rhoton to pass through. About the same time Myrtle Mitchell Cox gave written notice to Rhoton that he had no legal right of way over her land and demanded that he stop trespassing thereon. Rhoton consulted an attorney who advised him he did not have any right over

the Mitchell land, and in February, 1944, he brought suit to compel Rollins to unlock the gate.

In his bill Rhoton said he did not know whether he had any right of way over the Mitchell land, but if he did it was impassable. He filed an amended bill at the same time demanding that Rollins "open up, establish and determine a right of way through the said Mitchell or Cox premises; and have the validity thereof determined and ascertained." Rollins filed an answer and cross-bill claiming that Rhoton had no right of way over his land unless he was *legally* prevented from using the road through the Mitchell land; that in fact Rhoton had two different rights of way over the Mitchell land, by grant, and one of them had been used exclusively and continuously by the owners of the Rhoton land for more than fifty years; that there was also a right of way over the Mitchell land by necessity, and that Myrtle Mitchell Cox had no right to interfere with the use of these rights of way. The cross-bill prayed that Myrtle Mitchell Cox be made a party defendant thereto, and that a right of way or rights of way from the Rhoton land over the Mitchell land "be ascertained and determined."

Both Rhoton and Myrtle Mitchell Cox demurred to the cross-bill, on the ground that Rollins had no right to make Mrs. Cox a party, and Rhoton on the further ground that the limitation on the use of the right of way in the deed from Rollins to Rhoton was void for uncertainty. The court overruled the demurrer and that action is assigned as error by both appellants.

It was not error to overrule the demurrers. The situation was that Rhoton claimed a right of way over Rollins' land. Rollins said that under the terms of the grant Rhoton could not use that right of way because he had a right of way over the land of Mrs. Cox. Rhoton asserted that Mrs. Cox denied that he had such right and had stopped him, and that if he did have such right it was the duty of Rollins to establish it. To avoid circuity of action, it was proper to bring Mrs. Cox in and determine the matter in one suit.

■ It is true, as a general rule, that it is not permissible for a cross-bill to introduce new parties, or new and distinct matter not germane to the matter embraced in the original suit. Formerly, if new parties were essential to doing complete justice, the plaintiff might be compelled to amend and bring them in. Lile, Eq. Pl. & Pr., sec. 167. Since the enactment of section 6102 of the Code (Michie), when such nonjoinder is made to appear by affidavit or otherwise, new parties may be added as the ends of justice may require. "The purpose of the statute was to provide a simple method for joining as co-defendant a necessary party." *Hogan* v. *Miller*, 156 Va. 166, 157 S. E. 540.

*Derbyshire* v. *Jones*, 94 Va. 140, 26 S. E. 416, applies the general rule, but refers to the opinion of Chancellor Kent in *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. (N. Y.) 339, 355, and states that the intimate connection between the matters set up in the cross-bill there under consideration and the subject of the original bill was obvious, and adds: "It is true that new parties were made, but their presence was in the judgment of the court necessary in order to give the defendants the opportunity to make full defence to the demand of the plaintiffs, and it may be that the rule that the cross-bill shall not introduce new parties, may, with propriety, be relaxed in those cases where it is made to appear by evidence arising from the pleadings and proofs between the plaintiffs and defendants that the presence of another party is necessary in order that the defence to the plaintiffs' demand may be complete."

There was intimate connection here between the matter of the original and amended bills and the subject of the cross-bill; in fact, the amended bill demanded that Rollins open up, establish and determine a right of way through the land of Mrs. Cox. This he could not do except by bringing Mrs. Cox before the court, either in this suit or an independent suit. It would have been contrary to the objectives of modern pleading to require Rollins to prove his defense against Rhoton and then to prove it all over again against Mrs. Cox.

No prejudice resulted to anybody from bringing Mrs. Cox in and having the matter adjudicated in one suit.

Rhoton and Mrs. Cox then filed answers. Depositions were taken, and by the decree appealed from by both Rhoton and Mrs. Cox, the circuit court held that Rhoton "has the legal right" to use the right of way from his land through the Cox (Mitchell) land to the public highway, which right of way "shall be located as it was formerly located, used and traveled by the said Rhoton and those under whom he claims title prior to the purchase of said lands by W. J. Rollins and others;" and "that so long, and so long only, as the complainant, Floyd M. Rhoton, has the legal right to the use of the right-of-way from his lands over said Cox's said lands to said public highway as herein above provided and decreed, and so long as said right continues to use said right-of-way over the said Cox lands to the said public road as herein decreed, the complainant, Floyd M. Rhoton, has no right to use and travel over the road or right-of-way provided for in the deed from W. J. Rollins and others to the said Floyd M. Rhoton, bearing date October 2nd, 1939, for his use and benefit." The injunction previously granted, restraining Rollins from obstructing the road over his land, was thereupon dissolved.

By the additional assignments of error the appellants assert that the court committed error, (1) in holding that the Rollins deed did not grant to Rhoton a right of way over the Rollins land so long as Rhoton had "a legal right" to travel over the Cox land; and (2) in holding that Rhoton had a legal right to use the right of way through the Cox land.

The contention of Rhoton is that the words "prevented in any way," as used in the deed from Rollins, should be construed to mean that he had a right to use the Rollins right of way when he was prevented "by natural and physical causes, act of God, acts of the servient tenant of the Cox land, or for any other cause," from using the way through the Mitchell land; and that the notice given by Mrs. Cox was sufficient prevention. Rollins contends that the words meant "legal prevention," or a prevention based on a legal right. Mrs.

Cox claims that her notice was based on a legal right, because no right of way existed through her land.

The language employed in the deed is to be construed most strongly against the grantors, and in order to arrive at its meaning here, it is necessary to look to the circumstances surrounding the transaction, and to ascertain whether Rhoton has a right of way over the Mitchell land, and if so, the nature of it. *Stephen Putney Shoe Co.* v. *Richmond, etc., R. Co.*, 116 Va. 211, 81 S. E. 93. In that case it was said (p. 217):

"Where an easement has been granted or reserved by deed, the ordinary rule which governs in the construction of other writings prevails, namely, that the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source. But where its language is ambiguous, the court in order to ascertain the intention of the parties looks to the language employed in the light of the circumstances surrounding the parties and the land at the time the deed was executed. Goddard on Easements (Bennett's Ed.), p. 275; *Bank of Old Dominion* v. *McVeigh*, 32 Gratt. (73 Va.) 530; *Allemong* v. *Gray*, 92 Va. 216, 23 S. E. 298."

Rhoton's purchase was being financed by the federal government under the Tenant Purchase Act, 7 U. S. C. A., section 1000 *et seq.*, and the government was to have a deed of trust on the land to secure its advances. It had its attorney abstract the title and when no record could be found of a right of way to the public road, without which the land would be of little value, approval of the loan was withheld until there was a deed for a right of way. Mr. Orr, then county supervisor for the Farm Security Administration, and in charge of the purchase for Rhoton, testified that he did not remember being shown a right of way over the Mitchell land; that "as far as this trail is concerned" he knew the gate was there, but that he did not consider that material; that as they looked at it "there was no legal right of way and no way we could establish it, and we couldn't accept anything else."

The evidence shows that there has been a road of some

sort through the Mitchell land to the public road for perhaps fifty years. Its origin and its location are uncertain. Rollins claims there were deeds for two rights of way over the Mitchell land, one of record and one that was lost. The one of record was dated September 4, 1923, and by it W. H. Mitchell, father of Mrs. Cox, conveyed to C. D. Stone and Sallie Stone, his wife, former owners of the Rhoton land, in fee, a strip of land sixteen feet wide beginning at the southeast corner of the Stone (now Rhoton) land and running to the public road, under which the Stones were to construct a culvert for stock to pass through, and along which they were to build fences and provide gates. The consideration for this conveyance was "a spring known as the Poplar Spring." By deed dated June 10, 1924, recorded June 11, 1924, the Stones conveyed to Mitchell a spring "known as the Poplar Spring," in consideration of "a right of way through his land."

The right of way conveyed by the deed of September 4, 1923, was never used by the Stones, because of the expense of the culvert and fencing, and several months later C. D. Stone and Sallie Stone, his wife, and E. H. Stone conveyed this right of way back to W. H. Mitchell by a deed, not signed by Mitchell, also dated June 10, 1924, and recorded June 11, 1924. The language of this deed is confused. By it the Stones, in consideration "of a sixteen foot right of way deeded to C. D. Stone and Sallie Stone on the 4th day of September, 1923," "do hereby grant and convey unto the said W. H. Mitchell the said right of way for a sixteen (16) foot right of way, beginning at the gate on the Southwest side of Sallie Stone's land and with the old road to the fence, then with the fence to the public road at the oak corner of J. D. Franklin's line."

This description is not a correct description of the right of way that was being conveyed. It may be, as Rollins claims, the description of a right of way that Mitchell expected to convey to the Stones in return for their re-conveyance of the other to him, but there is no deed of record

from Mitchell to the Stones for such a right of way, and if one was ever made it was lost or destroyed.

The only evidence that such a deed ever existed was from E. H. Stone, brother of C. D. Stone, who testified that "I was right there when he deeded them a right of way to the road," and that "I brought that deed over here and gave it to the Clerk of the Court." He had previously testified that he was not present when the deed was made. It is conjectural from his testimony as to what deed he was talking about, and it is quite probable that the deed he was referring to, and the one he took to the clerk's office, which he said was the next day after it was made, was the deed of June 10, 1924, which was recorded next day. Rollins said in his cross-bill he would set up and establish said deed as a lost instrument in accordance with the statutes (Code, Michie, secs. 479-82). He completely failed to do so.

Rollins also claims there is a right of way by necessity over the Mitchell land. This is on the theory that both the Rhoton tract and the Mitchell tract were once owned by the same person, William Mitchell. In his brief Rollins says Myrtle Mitchell Cox inherited her land from her father, W. H. Mitchell, who inherited it from his father, William Mitchell. He introduced in evidence a copy of the will of William Mitchell in which W. H. Mitchell is not named. Rollins introduced Mrs. Pearl Highfied, a daughter of C. D. Stone, who testified that the Stone land was deeded to her grandmother, Margaret Starnes, by her father, William Mitchell. She filed copies of two deeds to Margaret P. Starnes, neither of them from William Mitchell. She filed a copy of the will of Margaret P. Starnes, which does not mention C. D. Stone or Sallie Stone, but devises some land to Sallie Q. Starnes. The lands and the persons involved in these instruments of title are not identified, and common ownership is not proved by any admissible testimony.

In order to establish a right of way by necessity, the owner of the dominant estate must not only show that his land and that of the owner of the servient estate once belonged to the same person, but must also show the neces-

sity for the right of way and that such necessity continues to exist. "The right of way thus acquired remains vested in the grantee and his successors in title so · long as the necessity therefor continues to exist." *Smith* v. *Virginia Iron, etc., Co.,* 143 Va. 159, 129 S. E. 274. If any necessity ever existed it ceased when Rollins acquired title to the Rhoton tract in 1938 and built the road over his own land to the public road. 28 C. J. S., Easements, section 56, p. 718; *Thornton* v. *McLeary,* 161 Miss. 697, 137 So. 785; *Waubun Beach Ass'n* v. *Wilson,* 274 Mich. 598, 265 N. W. 474, 103 A. L. R. 983.

Finally, Rollins claims that Rhoton has a right of way over the Cox land by prescription.

"In order to establish a private right of way by prescription over the lands of another, the use and enjoyment thereof by the claimant must be shown to be adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it is claimed (*Gaines* v. *Merryman,* 95 Va. 660, 666, 29 S. E. 738; Washb. Easem. (3d Ed.) side p. 86); and such use and enjoyment must continue for a period of at least twenty years (*Cornett* v. *Rhudy,* 80 Va. 710)." *Reid* v. *Garnett,* 101 Va. 47, 43 S. E. 182.

It must also be along a definite line of travel; it will not arise simply from permission of the owner, nor must the use of the way be in common with other people. "It is not essential, however, in order to satisfy the latter principle, that the claimant shall be the only one to enjoy the right of way, since other persons may likewise acquire a prescriptive right to use it; nevertheless, claimant's right must be exclusive in the sense that it does not depend for its enjoyment upon similar rights in others." *Kent* v. *Dobyns,* 112 Va. 586, 72 S. E. 139. See also, *Witt* v. *Creasey,* 117 Va. 872, 86 S. E. 128; *Muncy* v. *Updyke,* 119 Va. 636, 89 S. E. 884; *Graham* v. *Thompson,* 143 Va. 29, 129 S. E. 272; *Wall* v. *Landman,* 152 Va. 889, 148 S. E. 779; *Rives* v. *Gooch,* 157 Va. 661, 162 S. E. 184.

The road through Mrs. Cox's land fails in several respects to meet these requirements. Its use has not been

continuous, nor has it been exclusive or along a definite line of travel.

E. H. Stone, brother of C. D. Stone, former owner of the Rhoton land, and who lived on part of it for many years, testified that the road through the Mitchell land was not used all the time; that they went down through the woods, and used to come out over the Rollins land. Mrs. Highfield, daughter of C. D. Stone, testified that when they lived on the Rhoton land, from about 1900 to 1926, other ways to the public road were used, and one of them was over the Rollins land; that back at that time they were permitted to use almost any convenient right of way as neighborly accommodations, and the last years they came out through the woods altogether; that Mitchell did not object to their using that right of way, which was different from the way they used to go, and that they could not have used it if Mitchell had objected.

The fact that the Stones bought a right of way from Mitchell in September, 1923, on the southeast side of their land indicates that at that time the way now claimed to exist on the southwest, where the decree appealed from puts it, was at least of doubtful validity.

An even more serious question exists as to location of the supposed right of way. It has never followed along a definite line of travel. Nor is it shown that its use by the owner of the Rhoton land was a proprietary use under some claim of right independent of its use by others. Witnesses introduced by Rollins testified that the roads used were not in any certain place; that they just used the easiest way to get in and out; that the location has been changed and it is not now on its former location. J. D. Wright hauled lumber over the Mitchell land from different tracts in the neighborhood, and when James B. Cox hauled lumber over it everybody was using it. No definite location or description of the road is furnished by the evidence or by the decree appealed from.

It is uncontradicted that there have been several roads over the Mitchell land to the public road resulting from

changing routes of travel; that travel that way is rough and difficult; that the description in the deed of June 10, 1924, from the Stones to Mitchell, which was supposed to be the road Mitchell was to convey to Stone, describes an old road that is now out of use; that the road on the present location cannot be used or traveled by car; that it is impassable in winter, bad at any time and always inconvenient.

When Rollins granted a right of way to Rhoton, to be used by Rhoton if "prevented in any way" from using the road over the Mitchell land, he meant, as shown by the words he used and the circumstances under which he used them, to provide for the Rhoton land a way to the public road, to be used if and when a definitely established, reasonably usable road through the Mitchell land was not available.

An unusable road over the Mitchell land, of uncertain location, of doubtful origin, of questionable legal basis, and probably the subject of future controversy, is not sufficient to meet the condition necessary to prevent the use of the right of way over the Rollins land. To leave the Rhoton land in that condition would materially reduce its value. It would free the land of Rollins of a right of way granted by his deed and fix a burden on the Cox land on indefinite and unsatisfactory testimony. It would result in construing the language of Rollins' deed in a way more favorable to him than to his grantee, and more favorable to him than the language warrants or the circumstances of the transaction show was intended.

The decree of the circuit court would leave Rhoton and the future owners of his land to find their way over a road through the Mitchell land as it was formerly located and used by the owners of the Rhoton land before it was bought by Rollins, when it cannot be determined by this record or from the decree where that road was. It would terminate the right granted to Rhoton over the Rollins land and leave him with an uncertain right of way over the Mitchell land. This does not do equity under the facts as shown by the evidence.

The decree of the circuit court will be reversed and the injunction restraining Rollins from obstructing the road over his land will be restored and made permanent.

*Reversed.*