# Richmond

## GALLIE KEEN v. PARAGON JEWEL COAL COMPANY, INCORPORATED.

November 27, 1961.

Record No. 5336.

Present, All the Justices.

*George C. Sutherland* (*S. H. Sutherland,* on brief), for the plaintiff in error.

*Carl C. Gillespie* (*C. H. Combs; Gillespie & Gillespie; Combs & Street,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Gallie Keen instituted this proceeding against Paragon Jewel Coal Company, Incorporated, hereinafter referred to as defendant, by motion for judgment, to recover damages for the use of plaintiff's land over which defendant had been hauling coal mined by it from adjoining lands. Defendant filed grounds of defense setting out that it has a right of way of necessity over Keen's land for all purposes to which its lands may be reasonably devoted, and that the removal and transportation of coal is reasonably necessary for the beneficial use of its land.

The parties stipulated the facts in writing, attached thereto a map, and submitted all matters of law and fact to the court, waiving a jury. The court filed a written opinion, sustaining the contention of the defendant and entered judgment accordingly.

There are numerous assignments of error; but it is agreed that the sole question for our determination is whether or not the court erred in holding that defendant had an easement of necessity over the land of Keen.

The stipulated facts which may be summarized, in part, and quoted in part, are as follows:

Joseph C. Brown died intestate about 1877, seized and possessed of about 1500 acres of land situated on Benny's Branch in Buchanan county, Virginia. About 1890, a chancery suit was instituted in the circuit court of the said county, seeking a partition of the lands of which Brown died seized and possessed among the parties entitled thereto.

The lands were duly partitioned by a decree entered in 1895 into several tracts; but no express provision was made either in the report of the commissioners of partition, or in the decree of the court for the reservation of rights of way for the benefit of any of the persons to whom the tracts were allotted.

Tract No. 2, containing 484 acres, was allotted to Clinch Valley

Coal and Iron Company. The C. L. Ritter Lumber Company now owns the minerals underlying that tract, and the surface is owned by various other persons, including Gallie Keen. Keen owns approximately 50 acres near the line between Tract No. 2 and Tract No. 3 at the point where Benny's Branch flows northwardly from Tract No. 3 into Tract No. 2. Tracts numbered 3, 4, 5 and 6 are now owned by various persons as successors in title to assignees named in the partition decree. By several leases from the owners of those tracts, the defendant has acquired the coal underlying them, and it has been mining coal under Tracts Nos. 3 and 4 and transporting it across the land of Keen to the public highway.

At the time of the partition, Tracts Nos. 2, 3 and 4 "were covered with forest and woodland, with no clearing or improvement thereon." These tracts are situated on Benny's Branch in a steep and rugged mountain area. There was no road over Keen's land, and no way of access to or from defendant's lands, except down Benny's Branch and across Keen's land. A road now extends from the public highway and follows Benny's Branch northwardly through Tract No. 1, and thence across Tract No. 2 on Keen's surface land into Tract No. 3, and thence to Tract No. 5.

In 1910, there was a road along Benny's Branch running through the area now composing Keen's 50 acres, which was used for the purpose of hauling timber by tramroad from lands north of Keen's land. It had also been used by occupants of Tracts Nos. 3, 4, 5, 6 and 7 since 1912 as a means of ingress and egress to and from their homes. "There is no way by which the owners of Tracts Nos. 3, 4, 5, 6 and 7 can reach their lands from the highway except down Benny's Branch and across Tracts Nos. 2 and 1. Tracts Nos. 3, 4, 5, 6 and 7 are completely surrounded by extremely high steep mountains, except for the way down Benny's Branch. Furthermore, the lands on all other sides of the said five tracts were never owned by Joseph C. Brown, and such lands are completely strange to the Joseph C. Brown title."

It was also agreed by the parties that certain persons negotiating for the lease of coal rights underlying Tracts Nos. 3 and 4 had attempted to secure from Keen the grant of a right of way over his surface tract to haul coal from Tracts Nos. 3 and 4, and the plaintiff refused to grant the same.

The foregoing facts show that the parties acquired their lands from a common source of title; that the lands on each side of those under lease to defendant, except Tract No. 2, of which Keen's land

is a part and Tract No. 1, are completely strange to the Joseph C. Brown title; and that the only way by which defendant can reach the public highway with coal mined from its leased lands is down Benny's Branch over Keen's land.

The doctrine of the grant of an easement by implication under the circumstances here stated, is well settled in the decisions of the courts and in the textbooks. The definition of a way of necessity has been clearly stated many times.

In *Jennings* v. *Lineberry*, 180 Va. 44, 48, 21 S. E. 2d 769, we quoted with approval the following:

"A way of necessity is an easement arising from an implied grant or implied reservation; it is the result of the application of the principle that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses."

See *Sanderlin* v. *Baxter*, 76 Va. 299, 44 Am. Rep. 165; *Smith* v. *Virginia Iron etc. Co.*, 143 Va. 159, 164, 129 S. E. 274; *Ashby* v. *Justus*, 183 Va. 555, 558, 32 S. E. 2d 709; 6 Michie Jurisprudence, Easements, § 12, page 480.

In discussing easements arising by implied grant, this is said in 1 Minor on Real Property (Second Edition, Ribble) § 98, page 132:

"But the most usual and important of these easements is the *right of way by necessity*, which arises by implied grant where one conveys to another land which is either *entirely surrounded* by the *lands of the grantor*, or else is bordered in part by the *land of a stranger* and in part by *the lands of the grantor*. In either case the grantee of the land, even in the absence of express stipulation, has a *way by necessity over the grantor's land*, since otherwise the land granted to him would be unapproachable and useless. The grantor cannot take advantage of the absence of stipulation thus to *derogate from his own grant.*"

The same author says, § 101, page 140:

"(S)ince it would be contrary to public policy to permit such tract to remain forever useless and unproductive, it will be assumed that the parties *intended* that the grantor should *reserve a way by necessity* over the lands conveyed; * * *."

To the same effect see Tiffany, Real Property, Vol. 3, 3rd Ed., pages 284, *et seq.*

In 17 A Am. Jur., Easements, § 58, page 668, this is said:

"A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the

rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses."

We find no merit in Keen's contention that "there was never created any right of way by necessity for the hauling of the coal over his land, because there was no apparent necessity therefor at the time of the partition in 1895; and that the removal and transportation of coal from defendant's lands is not such a use as was apparent at the time of the partition." The authorities refute that contention.

"The kind of way, and the sort of and quantity of traffic over it are to be determined by the reasonable necessities for the enjoyment of the land. By the weight of authority in America, the limits of the way are to be determined simply by the needs of the land at the time of the creation of the way, but the scope of the way may increase to meet the increased necessities of the property." Minor on Real Property, (2d Edition, Ribble) Volume 1, § 98, page 134.

In Tiffany's Real Property, Volume 3, 3rd Ed., page 297, the author in speaking of ways of necessity has this to say:

"The fact that a particular use of land is being made at the time of the severance of ownership does not of itself show that the parties do not contemplate the possibility of another use of the land, and hence does not preclude the recognition of a way of necessity, upon a subsequent change of the use, in accordance with the requirements of the latter rather than the former use."

In *Crotty v. New River and Pocahontas Consolidated Coal Company*, 72 W. Va. 68, 78 S. E. 233, the following quotation from Jones on Easements, § 323, is approved:

" 'The prevailing view in this country is that a way of necessity is not limited to such use of the land as was actually made and contemplated at the time of the conveyance, but is a way for any use to which the owner may lawfully put the granted land at any time.' " See Annotation 164 A. L. R. pages 1001 *et seq.*

"According to good authority, a way of necessity is not limited to purposes connected with the use of the dominant tenement, since such a use existed at the time the easement was created, but is available for any and all purposes for which the dominant tenement may be adapted. The enjoyment of such a way is ordinarily limited only by the necessity for its use in connection with all lawful uses of the

land to which it is appurtenant." 17 A Am. Jur., Easements, § 126, page 736.

■ Keen cannot justify his contention that he was a purchaser for value and without notice. The necessity for the way down Benny's Branch and across Keen's land as the only means of access to the tracts under lease to the defendant was plainly visible and apparent to any person. A casual inspection would have shown that such lands were completely landlocked, except for the way down Benny's Branch. Moreover, Keen was charged with notice from the recorded title that defendant's land was surrounded on all sides by the lands of strangers, except Tracts Nos. 1 and 2 of the Brown estate.

■ Keen's contention that the defendant is not the owner of a dominant estate is also without merit. In the kind of easement here, which is sometimes called a pure easement, the servitude imposed upon the servient estate is for the benefit of and goes along with the land composing the dominant estate, and is, therefore, appurtenant to it.

"The right of way thus acquired remains vested in the grantee and his successors in title so long as the necessity therefor continues to exist." *Smith* v. *Virginia Iron etc. Co., supra,* 143 Va. page 164; *Rhoton* v. *Rollins,* 186 Va. 352, 363, 42 S. E. 2d 323.

Defendant as the lessee of the coal underlying its leased lands has all the rights for the removal of the coal that its lessors had, and had the right to grant. If the owner of the fee simple as the owner of the coal and owner of the surface had the right to use the road for all needful purposes, no additional burden is put upon the servient tenement if coal products are hauled over the road by one person and surface products by another. It is the tenement itself to which the easement of necessity is appurtenant, and not the person or persons who may make use of it.

The existence of each of the required elements of an easement of necessity is plainly shown in this case by the stipulated facts. As we have shown, at the time of the partition of Brown's lands, all of his property was in a state of nature, and there was no roadway in actual use for any property through Tract No. 2, which included Keen's surface tract. Since then every use to which Tracts Nos. 3, 4, 5, 6 and 7 have been put has required the use of the way down Benny's Branch and over Keen's land as necessary and essential to the beneficial enjoyment of the landlocked tracts.

We agree with the finding of the learned trial judge that defend-

ant's use of the right of way over Keen's land did not go beyond what was reasonably necessary for the transportation and marketing of the natural resources from defendant's land; and that Keen was entitled to no recovery against the defendant.

*Judgment affirmed.*