Hugh CARVER and Jean Carver *v.* Norman JONES,
Francis Jones, Emmett G. Tullis and Stella Tullis

CA 89-15 773 S.W.2d 842

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1989

*George Steel, Jr.*, for appellants.

*Young, Patton & Folsom*, by: *David Folsom*, for appellee.

GEORGE K. CRACRAFT, Judge. Hugh and Jean Carver appeal from an order of the chancery court holding that Emmett and Stella Tullis have an implied easement for ingress and egress across the Carvers' lands and enjoining the Carvers from interfering with the Tullises' use of the easement. The order further enjoined appellants from interfering with the use of the road by Norman and Francis Jones, the Tullises' tenants. We find no error and affirm the decree.

In 1969, appellees Tullis conveyed forty acres off the west side of their property to appellants. Appellees Tullis testified that, for many years prior to the conveyance to appellants, access from a county road to the property retained by the Tullises was gained by a lane which ran though the property sold to appellants. Appellees Tullis testified that they continued to use that roadway for access to their remaining property after the conveyance, as the conveyance left them landlocked and they had no other means of access to the county road.

Appellees Jones are the owners of a tract of land lying east of that retained by Tullis, but they do not deraign their title from a common source. The Joneses have an independent means of access to their own property. However, the existence of a creek on the western portion of the Joneses' property makes their access to that portion of their land west of the creek, and to the Tullises'

abutting land, extremely difficult, if not impossible, except in a specially equipped vehicle during very dry seasons. In June 1987, appellees Tullis purported to grant the right to use the easement across appellants' land to the Joneses, so as to provide them with a "reasonable passageway" to the western portion of the Joneses' own property. In July 1987, appellees Tullis leased the hunting rights on their property to appellees Jones for a period of five years at an annual rental of $120.00.

Appellants then barricaded the entrance to the roadway in question and successfully prohibited appellees from using it to connect the Tullises' land with the county road. Appellees brought this action to enjoin further interference with their use of the road. The chancellor granted injunctive relief in the following language:

6. That Plaintiffs Tullis have an easement in the nature of a way of necessity over the above-described land. That this easement by way of necessity is to allow Plaintiffs Tullis and their assigns full use and enjoyment of their tract of land.

7. That said easement right of way is for the purpose of connecting the Tullis tract of land with the county road.

8. That Defendants Carver and their assigns be, and they are hereby permanently enjoined against closing said right of way so that it may be freely used by Plaintiffs Tullis, their assigns, and persons authorized by Plaintiffs Tullis in the proper use of the way to pass over the way of Defendants Carver tract of land and to further permanently enjoin against interfering in any way with the use by Plaintiffs Norman Jones and Francis Jones or the persons authorized by Plaintiffs Tullis to use said right of way.

As the Tullises' right to use the roadway rests on an entirely different footing from that of the Joneses, we will treat their respective rights separately.

## RIGHT OF APPELLEES TULLIS TO USE THE ROAD

Appellants contend that the evidence does not sustain the finding that appellees Tullis had an easement across appellants' land and that the court therefore erred in entering the injunction.

Appellants contend that the use by appellees was permissive only, and could not ripen into an easement by prescription or adverse use. Citing *Burdess* v. *Arkansas Power & Light Co.*, 268 Ark. 901, 597 S.W.2d 828 (1980), and *Corruthers* v. *King*, 235 Ark. 977, 363 S.W.2d 413 (1963), they argue that, as the lands are open and unenclosed, there is a presumption that the use of the road was not adverse but permissive. However, these are rules applied to acquiring easements by prescription, and they have no application to easements that arise by implication of law.

The reasons for, and general rules relating to, easements by implication are recited in *Greasy Slough Outing Club, Inc.* v. *Amick*, 224 Ark. 331, 274 S.W.2d 63 (1954), as follows:

> Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made.

*Id.*, 224 Ark. at 337, 274 S.W.2d at 67 (citations omitted). *See also Kennedy* v. *Papp*, 294 Ark. 88, 741 S.W.2d 625 (1987). Thus, in order to establish an easement by implied reservation, where there was a unity of title and a subsequent sale of a portion of the land over which the easement is claimed, use of the easement must have been apparent, continuous, and necessary, and it must appear that a continuance of its use is essential to the further use and enjoyment of the estate retained. The necessity for the easement is to be determined at the time of the grant, with the word "necessary" meaning that there can be no other reasonable mode of enjoying the dominant tenement without the easement; there must be an element of absolute necessity. *Greasy Slough Outing Club, Inc.* v. *Amick, supra.*

Here, appellees Tullis testified that the roadway over which they claimed the easement was in existence and used for ingress and egress to that portion of the land they retained since before they made the conveyance to appellants. The use of the roadway was open and continuous, and there was no other means of access to their property. They testified that they have continued to use the way and still have no means of access to their land other than through appellants' land or the land of third persons.

■ Although appellants argue that the element of necessity did not exist as to the Tullises, they do not point out to us, and we are unable to determine, where in the record there was evidence of any means of access open to appellees Tullis at or after the time of the conveyance other than across the lands conveyed to appellants. On the other hand, appellee Emmett Tullis testified positively that his property was landlocked as a result of the conveyance to appellants. Whether use of the easement was necessary was a question of fact for the trial court to determine. *Greasy Slough Outing Club, Inc.* v. *Amick, supra.* The chancellor found that appellees Tullis had satisfactorily proven those factors that give rise to an easement by implication. While we review chancery cases *de novo*, we do not reverse the chancellor's findings unless they are clearly against the preponderance of the evidence, or clearly erroneous. Ark. R. Civ. P. 52(a). From our review of the record, we cannot conclude that the chancellor's finding in this case is clearly erroneous.

RIGHT OF APPELLEES JONES TO USE THE ROAD

■ We agree with appellants that the June 1987 instrument executed by appellees Tullis conveyed to the Joneses no rights to cross appellants' land. Easements by necessity and by implication are appurtenant to the dominant estate and run with the land. *See Brandenburg* v. *Brooks*, 264 Ark. 939, 576 S.W.2d 196 (1979). It is clear that "[a]n appurtenant easement is incapable of existence separate and apart from the particular land to which it is annexed. So, it cannot be conveyed by the party entitled to it separate from the land to which it is appurtenant. It can be conveyed only by a conveyance of such land." 2 G. Thompson, *Commentaries on the Modern Law of Real Property* § 322, at 63-64 (Repl. 1980) (footnotes omitted). *See also* 28 C.J.S. *Easements* § 45 (1941). Here, the June 1987 instrument

merely purported to grant to the Joneses the right to cross appellants' property in order that the Joneses would have easier access to the western portion of their own property. It was not linked to any interest in the land to which the easement was appurtenant, i.e., the Tullis property, and was thus an ineffective attempt to transfer the easement.

Nor does the property owned by appellees Jones have as an appurtenance to it an easement by implication. Although the Joneses are the owners of land abutting that of the Tullises, they acquired their title from a different source, and there was therefore no severance of that unity of title from which easements by implication of law arise. Any rights that the Joneses have to use the road must therefore arise solely from their status as lessees of an interest in the estate to which the easement across appellants' property is appurtenant.

██ Where an easement is annexed as an appurtenance to land, whether by express or implied grant or reservation, or by prescription, it passes with a transfer of the land, even though not specifically mentioned in the instrument of transfer. *Warren v. Cudd*, 261 Ark. 690, 550 S.W.2d 773 (1977). We are cited no authority supporting the proposition that the use of an appurtenant easement for purposes connected with the dominant estate may be made only by the owner of the fee. To the contrary, we find the rule of general application to be that a lessee of the dominant estate is entitled to the use of its appurtenant easements in connection with the use and enjoyment of his leasehold interest. *See* 51C C.J.S. *Landlord and Tenant* § 293 (1968); 28 C.J.S. *Easements* §§ 90 and 109 (1941). Nor are these rules limited only to leases of all rights incident to ownership of the dominant estate. As a general rule, an easement may be used by those who own or legally occupy any part of the estate to which the easement is appurtenant. *See* 28 C.J.S. *Easements* § 90.

In *Keen v. Paragon Jewel Coal Co.*, 203 Va. 175, 122 S.E.2d 543 (1961), the right of a mineral rights lessee to transport coal from the dominant estate across an easement by implication on adjoining lands was in issue. In a well-reasoned opinion, the Virginia court said:

> Keen's contention that the defendant is not the owner of a dominant estate is without merit. In the kind of

easement here, which is sometimes called a pure easement, the servitude imposed upon the servient estate is for the benefit of and goes along with the land composing the dominant estate, and is, therefore, appurtenant to it.

"The right of way thus acquired remains vested in the grantee and his successors in title so long as the necessity therefor continues to exist." *Smith* v. *Virginia Iron etc. Co., supra*, 143 Va. page 164, 129 S.E. page 276; *Rhoton* v. *Rollins*, 186 Va. 352, 363, 42 S.E.2d 323.

Defendant as the lessee of the coal underlying its leased lands has all the rights for the removal of the coal that its lessors had, and had the right to grant. If the owner of the fee simple as the owner of the coal and owner of the surface had the right to use the road for all needful purposes, no additional burden is put upon the servient tenement if coal products are hauled over the road by one person and surface products by another. *It is the tenement itself to which the easement of necessity is appurtenant, and not the person or persons who may make use of it.*

*Id.*, 122 S.E.2d at 547 (emphasis added).

 Here, for a valuable consideration, the Tullises leased the hunting rights on their land to the Joneses for a period of five years. The right to use the easement passed with that transfer of a leasehold interest, whether mentioned in the instrument of transfer or not. On the facts of this case, we conclude that, so long as the Joneses use this road for purposes connected with the exercise of their right to use and enjoyment of their leasehold interest in the Tullises' land, the appellants have no right to interfere.

Affirmed.

COOPER and ROGERS, JJ., agree.