No. 95-2394

Jerry D. Patterson and          *
Mary Lou Patterson,             *
                                *
        Appellants,             *
                                *
                                * Appeal from the United States
     v.                         * District Court for the
                                * Western District of Arkansas.
Buffalo National River,         *
a Part of the Department of the *
Interior, an Agency of the      *
United States of America,       *
                                *
        Appellee.               *


Submitted:  January 8, 1996

Filed:  February 12, 1996


Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and ALSOP,[*]
     District Judge.


MORRIS SHEPPARD ARNOLD, Circuit Judge.

     Jerry and Mary Lou Patterson appeal the district court's order
granting summary judgment to the Buffalo National River ("BNR").
We reverse.

                              I.

     Between 1939 and 1976, the Hall family owned a 159.49-acre
tract of land in northern Arkansas.  In 1976, they conveyed the
north 79.49 acres of the tract to the United States, and that

---

[*]The HONORABLE DONALD D. ALSOP, United States District
Judge for the District of Minnesota, sitting by
designation.

acreage was incorporated into the Buffalo National River project. The deed also purported to quitclaim all of the grantors' interest "in any means of ingress or egress." At the time of the transfer, a primitive roadway crossing the land ceded to the United States connected the land that the Halls retained with a public road. The plaintiffs contend that this roadway continues to be the only way to gain access to the south eighty acres.

In 1986, the United States National Park Service ("Park Service") denied the Halls access to their retained land over this roadway on the ground that the Park Service did not grant private road easements across park property. The Halls then sold their retained land to the Pattersons; the deed purported to include an easement by necessity across the adjoining 79.49 acres now owned by the United States. In 1987, Jerry Patterson wrote the Park Service to ask if he could use the roadway to gain access to his property, and the Park Service again denied the request.

In 1994, the Pattersons sued BNR, an agency of the United States, in Arkansas state court. They sought a declaration that they had an easement by implication or by necessity across the government's land and asked for an order permanently enjoining BNR from interfering with their use of that easement. The United States removed the case to the federal court pursuant to the Quiet Title Act, 28 U.S.C. § 2409a(a); see also 28 U.S.C. § 1346(f). The district court held on summary judgment that the applicable statute of limitations barred the Pattersons' claim and that, even if their action had been timely, the Pattersons did not have an easement by implication or by necessity, because the 1976 deed released all such easements to the United States.

## II.

The Pattersons first argue that the district court erred in holding that their action was barred by the 12-year statute of

limitations of the Quiet Title Act. 28 U.S.C. § 2409a(g). They argue that the district court erroneously found that the Pattersons' cause of action accrued when the Halls conveyed their property to the United States in 1976, because the statute began to run at the earliest in 1986, when the Park Service denied the Halls access to the roadway. We agree.

An action under the Quiet Title Act accrues "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g). Whether the Pattersons "should have known" about the government's claim is subject to a test of reasonableness, State ex rel. Bd. of University and School Lands v. Block, 789 F.2d 1308, 1312 (8th Cir. 1986); "[a]ll that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff[s]," id. at 1313.

The district court found that "the language of the deed which released to the United States 'any means of ingress and egress' constitutes notice" that the Halls relinquished their right to access their land through park property. We disagree. We have held, it is true, that plaintiffs are deemed to be on notice for purposes of the Quiet Title Act when they enter into a written agreement that acknowledges the government's claim. State ex rel. Bd., 789 F.2d at 1313; see also Vincent Murphy Chevrolet Co. v. United States, 766 F.2d 449, 452 (10th Cir. 1985) (holding easements in deed constituted notice of a claim under Quiet Title Act). The rule could hardly be otherwise in such a case. But in this case, we think that the restrictions contained in the 1976 deed were at best too ambiguous to place the Halls on notice of the government's claims. The government argues that the Halls should have known that they could no longer use the roadway to gain access to their property because their deed relinquished "any means of ingress and egress." The Pattersons contend (and we agree for

-3-

reasons that will appear) that the deed is more plausibly read to mean "any means of ingress and egress" <u>to the land conveyed to the government</u>. As the Pattersons point out, when read this way, the deed merely restates Arkansas law: in Arkansas, a transfer of property automatically passes all easements appurtenant to that property, including all means of ingress and egress to it. <u>See Wallner v. Johnson</u>, 21 Ark. App. 124, 129, 730 S.W.2d 253, 256 (1987).

Because the deed is at best ambiguous, we must construe it against the party who prepared it (in this case the United States), and we may consider extrinsic evidence of the parties' intent. <u>Wilson v. Brown</u>, 320 Ark. 240, 244, 897 S.W.2d 546, 548 (1995). In this case, if we interpret the deed as the government urges, we must presume that the Halls can reasonably be charged with knowing in 1976 that they were completely landlocked. Extrinsic evidence from the time that the transaction occurred, however, leads us to conclude otherwise. Immediately prior to the sale, the Department of the Interior appraised the land and concluded that the Halls were not entitled to severance damages. The appraiser's report indicated that the value of the Halls' retained land would not be diminished, in part because "access will not be lost." The government suggests that the appraiser was not referring to the roadway in question. Because the roadway in question was the only means of gaining access to the retained property, however, it is reasonable to conclude that Halls probably assumed that he was. The only reasonable conclusion that a factfinder could come to, therefore, is that the Halls could not have had a reasonable awareness in 1976 that the government would claim the right to block access to their land. Instead, we find that they learned of this claim only when the Park Service responded to their 1985 inquiry. We therefore hold that the Pattersons' action is not time-barred.

III.

The Pattersons next argue that the district court erred when it refused to grant a declaratory judgment to the effect that they have an implied easement by implication or by necessity across the land deeded to the United States. The district court denied the Pattersons' motion for summary judgment because it found that, even if the statute of limitations had not barred their action, the Halls' 1976 deed released any easement that they might have had across park property. The court reasoned that "the language of the conveyance at issue belies the existence of any intent on the part of the parties to provide the Halls with any means of ingress and egress to the remaining 80 acres." We disagree.

A.

Easements by implication and by necessity are appurtenant easements. Brandenburg v. Brooks, 264 Ark. 939, 940, 576 S.W.2d 196, 197 (1979). That is, they benefit a particular parcel of land rather than a particular individual. As the Arkansas Supreme Court recently explained, "[a]n easement appurtenant serves a parcel of land called the dominant tenement. The property on which the easement is imposed is the servient tenement." Wilson v. Brown, 320 Ark. at 243-44, 897 S.W.2d at 548. In this case, the Pattersons claim that they have an easement appurtenant to the south 80 acres (dominant tenement) across the land purchased by the government (servient tenement).

Because appurtenant easements are attached to a particular parcel of land, they cannot be conveyed apart from the dominant tenement, Carver v. Jones, 28 Ark. App. 288, 292, 773 S.W.2d 842, 845 (1989), but they can, of course, be extinguished by the execution of a written release to the owner of the servient tenement. See 2 A. James Casner, American Law of Property § 8.95 at 302 (1952). The government contends that the 1976 deed extinguished any easements across the land it purchased.

-5-

We disagree. A document releasing an easement must meet the requirements of one creating an easement, id., including a legal description of the interest conveyed. White v. Zini, 39 Ark. App. 83, 87-88, 838 S.W.2d 370, 372-73 (1992) (en banc). Because it is attached to the dominant tenement, we would expect a deed transferring an easement appurtenant to the property retained by the Halls to describe the south 80 acres. Because it does not, we think that the relevant portion of the deed is more plausibly read to quitclaim the Halls' rights in "any means of ingress and egress" to the property described in the document (i.e., the property transferred to the government), not to the property that the Halls retained.

Furthermore, even if the deed had clearly purported to release all easements appurtenant to the south 80 acres, it would have conveyed nothing under Arkansas law. The relevant section purported to "quit claim" all interests in "means of ingress and egress." In Arkansas, deeds using this language are interpreted as quitclaims, and a grantor can by quitclaim convey only interests that he owns at the time that the deed is delivered. Graham v. Quarles, 206 Ark. 542, 547, 176 S.W.2d 703, 706 (1944) ("a quitclaim deed does not purport to convey any title except such as the grantor had at the time of its execution"); Chavis v. Hill, 216 Ark. 136, 138, 224 S.W.2d 808, 809 (1949) ("afteracquired property rights do not pass under a quitclaim deed").

Easements by implication and by necessity are created upon severance of ownership of a single parcel of land that was previously held by one owner. If it is necessary for the continued enjoyment of the dominant tenement, the dominant tenement acquires an implied easement over the servient tenement when the two are severed. Greasy Slough Outing Club, Inc. v. Amick, 224 Ark. 330, 337, 274 S.W.2d 63, 67 (1954). In other words, if the Halls were entitled to an easement by implication or by necessity over the

land ceded to the government, they had no interest in the easement before the property was divided; the right arose after severance. See 2 Casner, American Law of Property § 8.26 at 250 (discussing quasi-easements, "a grantor could not, of course, have had, before his conveyance, an easement in the land conveyed"). Therefore, the Halls could not have released their easement to the government by quitclaim in the 1976 deed.

B.

Having found that the Halls did not relinquish their rights to any implied easements to which they might have been entitled, we now consider whether the Pattersons are actually entitled to an easement by implication or by necessity. The district court found, and the government does not dispute, that the roadway crossing park property continues to provide a way to gain access to the Pattersons' property. The court did not determine, however, whether the road was used continuously prior to severance or whether another reasonable means of gaining access to the Pattersons' property exists.

When an owner of a single parcel of land uses part of his land to benefit a second part, courts may find that a quasi-easement exists; the land benefited is called the "quasi-dominant tenement" and the property used is called the "quasi-servient tenement." Manitowoc Remanufacturing, Inc. v. Vocque, 307 Ark. 271, 276, 819 S.W.2d 275, 278 (1991). When the parcel is divided, the quasi-easement becomes an "implied easement corresponding to a pre-existing quasi-easement" or, put more simply, an easement by implication. Id., 307 Ark. at 277, 819 S.W.2d at 278-79. The Arkansas Supreme Court explained this situation as follows: "[W]here, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, ... then, upon a severance of such ownership, ... there arises by implication of law a grant or reservation of the right to

-7-

continue such use." Greasy Slough, 224 Ark. at 337, 274 S.W.2d at 67 (internal quotes omitted). The law recognizes an easement by implication, however, only if the use of the quasi-easement prior to severance was "apparent, continuous, and necessary" and if a continuance of its use is essential to the further use and enjoyment of the estate retained. Id.

Easements by necessity share many of the characteristics of easements by implication. For instance, they arise when a parcel of land held by a single owner is severed and the easement is necessary for the enjoyment of the dominant tenement, both at the time of severance and at the time the holder of the dominant tenement asserts the right to the easement. Powell v. Miller, 30 Ark. App. 157, 162, 785 S.W.2d 37, 39 (1990). In contrast to an easement by implication, however, "an easement by necessity ... allows for a route of access where one previously did not exist." Burdess v. U.S., 553 F. Supp. 646, 650 (E.D. Ark. 1982); see also Powell, 30 Ark. App. at 162, 785 S.W.2d at 39. Therefore, the Pattersons are entitled to an easement by necessity if crossing the government's land is necessary for access to their property.

We are unable to determine whether the Pattersons have an easement over the government's land, however, because several questions of material fact remain. For one thing, the Pattersons are not entitled to either type of easement unless they demonstrate that one is necessary, not simply convenient, in order to gain access to their property through the government's land. Kennedy v. Papp, 294 Ark. 88, 94, 741 S.W.2d 625, 628 (1987) ("[t]he degree of necessity ... must be more than one of mere inconvenience"). The Pattersons must show that "there could be no other reasonable mode of enjoying the dominant tenement." Manitowoc Remanufacturing, 307 Ark. at 277, 819 S.W.2d at 279; see also Brandenburg, 264 Ark. at 940, 576 S.W.2d at 197 (requiring "reasonable necessity"). (The degree of necessity required is the same for easements by necessity

and by implication.  Kennedy, 294 Ark. at 94, 741 S.W.2d at 628.)
Although their land is surrounded on three sides by private
landowners, the Pattersons claim that they are landlocked unless
they can use the roadway in question.  They assert that the nature
of the surrounding terrain makes it virtually impossible to
construct a road across another neighbor's property.  The Arkansas
Supreme Court has indicated that courts may consider terrain when
determining necessity, Brandenburg, 264 Ark. at 940, 576 S.W.2d at
197, but, of course, we leave it up to the trial court to weigh
such evidence should it become necessary.  "Whether use of the
easement [is] necessary [is] a question of fact for the trial court
to determine."  Carver, 28 Ark. App. at 292, 773 S.W.2d at 845.

     Furthermore, in order to claim an easement by implication over
the existing roadway, the Pattersons must demonstrate that prior to
severance the roadway was permanent and obvious and that the Halls'
use of it was continuous and apparent.  Greasy Slough, 224 Ark. at
337, 274 S.W.2d at 67.  The government asserts that the roadway was
not used at the time of the initial sale.  Again, the district
court may be called on to resolve these disputed facts on remand.

     We are aware that the law of Arkansas may differ from that of
other states, in that it partially conflates easements by necessity
and easements by implication by imputing to each of them the
characteristic that they arise only if they are necessary to the
enjoyment of the land to which they are claimed to be appurtenant.
See 2 Casner, American Law of Property § 8.26 at 250-51, § 8.43 at
263 (discussing other states' laws).  But that is the clear purport
of the Arkansas cases, by which, of course, we are bound in this
diversity case.  Different consequences, however, could follow
depending on whether the Pattersons make out a case for an easement
by implication or an easement by necessity.  For instance, if the
easement is found to be necessary to the enjoyment of the retained

land, but the previous use of the land claimed to be servient proves not to have been continuous or apparent, then the Pattersons will be entitled to have an easement laid out, but not necessarily where they assert that the quasi-easement was located. Furthermore, the nature and extent of the previous use of a quasi-easement will necessarily determine its scope and thus the traffic burdens to which the servient tenement can be subjected, but the same, of course, cannot be said of an easement by necessity, there being no prior use capable of giving it definition. There may well be other differences, but we leave these difficulties to the trial court to work out as the facts may require.

## IV.

For the foregoing reasons, we reverse the order of the district court and remand the case to determine whether the Pattersons are entitled to an easement by implication or by necessity.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-